# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SULLIVAN

Index # E2022-439

03/22/2022

-------------------------------------------------------------x

VERTEX FUNDING LLC,

               Plaintiff,

               -against-

HCF INSURANCE AGENCY **and** JASON MICHAEL
ADELMAN,

               Defendant(s).

-------------------------------------------------------------x

**SUMMONS**

To the above-named Defendant(s):

      YOU ARE HEREBY SUMMONED and required to serve upon Plaintiff's attorney an

answer to the complaint in this action within twenty days after the service of this summons,

exclusive of the day of service, or within thirty days after service is complete if this summons is

not personally delivered to you within the State of New York. In case of your failure to answer,

judgment will be taken against you by default for the relief demanded in the annexed complaint.

      Plaintiff designates Sullivan County as the place of trial. The basis of the venue is designated in the
Agreement between the parties.

    Dated: March 17, 2022
         New York, NY

                        By: */s/ Steven Zakharyayev*
                        Steven Zakharyayev, Esq.
                        10 W 37th Street, RM 602
                        New York, NY 10018
                        (201) 716-0681
                        *Attorneys for Plaintiff*

TO DEFENDANT(S):

HCF INSURANCE AGENCY
21747 ERWIN STREET, 2ND FLOOR WOODLANDS HILLS CA 97367

JASON MICHAEL ADELMAN
19 HITCHING POST LANE BELL CANYON CA 91307

Case 7:22-cv-03376-NSR   Document 1-1   Filed 04/26/22   Page 3 of 54

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SULLIVAN



---------------------------------------------------------------X

VERTEX FUNDING LLC

                 Plaintiff,

             -against-

HCF INSURANCE AGENCY **and** JASON MICHAEL
ADELMAN,

                 Defendant(s).

---------------------------------------------------------------X

Index # E2022-439

**VERIFIED COMPLAINT**

Plaintiff, VERTEX FUNDING LLC, by its attorney Steven Zakharyayev, Esq., as and for

its complaint against Defendant(s) herein, alleges as follows:

## PARTIES

1. Plaintiff VERTEX FUNDING LLC ("Plaintiff") is a New York limited liability
company engaged in the receivable financing business.

2. Upon information and belief, HCF INSURANCE AGENCY ("Merchant") is a
California domestic stock company.

3. Defendant JASON MICHAEL ADELMAN ("Guarantor") is an individual residing
in the State of California and upon information and belief is a principal of defendant-
seller.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the Defendants pursuant to CPLR § 301 based upon a
contractual provision in the agreements between the parties pursuant to which the
Defendants consented to jurisdiction in the State of New York and in this Court.

5. Venue is appropriate in this Court pursuant to CPLR § 501 pursuant to a contractual
provision fixing venue in the agreements between the parties.

## FACTS

### First Purchase Agreement

6.  On November 8, 2021, Plaintiff and Merchant entered into a Standard Merchant Cash Advance Agreement (the "First Purchase Agreement") pursuant to which Plaintiff purchased 25% of the Merchant's total future accounts receivable up to the sum of $870,000 (the "First Purchased Amount") in exchange for an upfront purchase price of $600,000 (the "First Purchase Price").  A copy of the First Purchase Agreement is attached as **Exhibit A.**

7.  Pursuant to a Guarantee executed contemporaneously with the First Purchase Agreement (the "First Guarantee"), Guarantor guaranteed the obligations of Merchant to Plaintiff under the First Purchase Agreement. A copy of the First Guarantee is included in Exhibit A.

8.  On or around November 8, 2021, Plaintiff funded the First Purchase Price, less applicable and disclosed upfront fees.

9.  Pursuant to the provisions of the First Purchase Agreement, Merchant was required to deposit all of its accounts receivable into an approved account.

10. The First Purchased Amount of receivables was to be remitted via daily ACH debits from the approved account in the amount of $10,875.00, which amount was agreed to be a good faith approximation of 25% of the Merchant's average daily receipts, subject to the reconciliation provision contained in the Section 4 of the First Purchase Agreement.

11. Merchant defaulted pursuant to section 34(11) of the First Purchase Agreement on December 20, 2021 because four or more attempted ACH debits were rejected by Merchant's bank during the course of that month.

12. Guarantor breached the provisions of the First Guarantee by failing to perform Merchant's obligations to Plaintiff pursuant to the First Purchase Agreement when Merchant failed to do so.

13. Merchant remitted receivables in the amount of $448,333.00, leaving an outstanding balance owed on the First Purchased Amount of $421,667.00. A remittance history for the First Purchase Agreement is attached as **Exhibit B**.

14. Pursuant to Section 2 of the First Purchase Agreement, Defendants are also liable to Plaintiff for a default fee of $2,500.

15. Pursuant to Section 44 of the First Purchase Agreement, Defendants are also liable to Plaintiff for the reasonable costs associated with the Merchant's breaches of the First Purchase Agreement including, without limitation, reasonable attorneys' fees, which may include a contingency fee of up to 33% of the amount due at the time of default.

16. Based on the foregoing, Defendants are liable to Plaintiff on the First Purchase Agreement in the amount of $424,167.00, plus attorneys' fees and costs, and interest at the rate of 9% per annum from the date of default to the date of entry of judgment herein.

Second Purchase Agreement

17. On December 17, 2021, Plaintiff and Merchant entered into a Standard Merchant Cash Advance Agreement (the "Second Purchase Agreement") pursuant to which Plaintiff purchased 16% of the Merchant's total future accounts receivable up to the sum of $725,500 (the "Second Purchased Amount") in exchange for an upfront purchase price of $500,000 (the "Second Purchase Price"). A copy of the Second Purchase Agreement is attached as **Exhibit C**.

18. Pursuant to a Guarantee executed contemporaneously with the Second Purchase Agreement (the "Second Guarantee"), Guarantor guaranteed the obligations of Merchant to Plaintiff under the Second Purchase Agreement. A copy of the Second Guarantee is included in Exhibit C.

19. On or around December 17, 2021, Plaintiff funded the Second Purchase Price, less applicable and disclosed upfront fees.

20. Pursuant to the provisions of the Second Purchase Agreement, Merchant was required

to deposit all of its accounts receivable into an approved account.

21. The Second Purchased Amount of receivables was to be remitted via daily ACH debits from the approved account in the amount of $6,041.67, which amount was agreed to be a good faith approximation of 16% of the Merchant's average daily receipts, subject to the reconciliation provision contained in the Section 4 of the Second Purchase Agreement.

22. Merchant defaulted pursuant to section 34(11) of the Second Purchase Agreement on December 31, 2021 because four or more attempted ACH debits were rejected by Merchant's bank during the course of that month.

23. Guarantor breached the provisions of the Second Guarantee by failing to perform Merchant's obligations to Plaintiff pursuant to the Second Purchase Agreement when Merchant failed to do so.

24. Merchant remitted receivables in the amount of $119,999.73, leaving an outstanding balance owed on the Second Purchased Amount of $605,000.27. A remittance history for the Second Purchase Agreement is attached as **Exhibit D**.

25. Pursuant to Section 2 of the Second Purchase Agreement, Defendants are also liable to Plaintiff for a default fee of $2,500.

26. Pursuant to Section 44 of the Second Purchase Agreement, Defendants are also liable to Plaintiff for the reasonable costs associated with the Merchant's breaches of the Second Purchase Agreement including, without limitation, reasonable attorneys' fees, which may include a contingency fee of up to 33% of the amount due at the time of default.

27. Based on the foregoing, Defendants are liable to Plaintiff on the Second Purchase Agreement in the amount of $607,500.27, plus attorneys' fees and costs, and interest at the rate of 9% per annum from the date of default to the date of entry of judgment herein.

FILED: SULLIVAN COUNTY CLERK 03/21/2022 01:09 PM
NYSCEF DOC. NO. 1    Case 7:22-cv-03376-NSR    Document 1-1    Filed 04/26/22    Page 7 of 54

INDEX NO. E2022-439
RECEIVED NYSCEF: 03/21/2022

## AS AND FOR A FIRST CAUSE OF ACTION
### (Breach of First Purchase Agreement against Merchant)

28. Plaintiff repeats and realleges the allegations contained in the paragraphs set forth above as if fully restated.

29. Merchant breached the provisions of the First Purchase Agreement as set forth above.

30. Pursuant to First Purchase Agreement, in the event of Merchant's default, Plaintiff may declare the total amount of receivables purchased and not delivered as immediately due and owing to Plaintiff, including costs and fees.

31. Based on the foregoing, Merchant is liable to Plaintiff for its breach of the First Purchase Agreement in the amount of $424,167.00, plus attorneys' fees and costs, and interest at the rate of 9% per annum from the date of default to the date of entry of judgment herein.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Breach of First Guaranty against Guarantor)

32. Plaintiff repeats and realleges the allegations contained in the paragraphs above as if fully restated.

33. Guarantor breached the provisions of the First Guarantee as set forth above by failing to perform Merchant's obligations to Plaintiff when Merchant failed to do so.

34. Based on the foregoing, Guarantor is liable to Plaintiff for his breach of the First Purchase Guarantee in the amount of $424,167.00, plus attorneys' fees and costs, and interest at the rate of 9% per annum from the date of default to the date of entry of judgment herein.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Breach of Second Purchase Agreement against Merchant)

35. Plaintiff repeats and realleges the allegations contained in the paragraphs above as if fully restated.

36. Merchant breached the provisions of the Second Purchase Agreement as set forth

above.

37. Pursuant to Second Purchase Agreement, in the event of Merchant's default, Plaintiff may declare the total amount of receivables purchased and not delivered as immediately due and owing to Plaintiff, including costs and fees.

38. Based on the foregoing, Merchant is liable to Plaintiff for its breach of the First Purchase Agreement in the amount of $607,500.27, plus attorneys' fees and costs, and interest at the rate of 9% per annum from the date of default to the date of entry of judgment herein.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Breach of the Second Guarantee against Guarantor)

39. Plaintiff repeats and realleges the allegations contained in the paragraphs above as if fully restated.

40. Guarantor breached the provisions of the Second Guarantee as set forth above by failing to perform Merchant's obligations to Plaintiff when Merchant failed to do so.

41. Based on the foregoing, Guarantor is liable to Plaintiff for its breach of the Second Guarantee in the amount of $607,500.27, plus attorneys' fees and costs, and interest at the rate of 9% per annum from the date of default to the date of entry of judgment herein.

WHEREFORE, Plaintiff respectfully requests judgment as follows:

A. On its First and Second Causes of Action, a money judgment against the Defendants, jointly and severally, in the amount of $424,167.00, plus attorneys' fees and costs, and interest at the rate of 9% per annum from the date of default to the date of entry of judgment herein;

B. On its Third and Fourth Causes of Action, a money judgment against the Defendants, jointly and severally, in the amount of $607,500.27, plus attorneys' fees and costs, and interest at the rate of 9% per annum from the date of default to the date of entry of judgment herein; and

INDEX NO. E2022-439

Case 7:22-cv-03376-NSR    Document 1-1    Filed 04/26/22    Page 9 of 54

RECEIVED NYSCEF: 03/21/2022

C.  For such other and further relief as the Court deems just and proper.

Dated: March 17, 2022
       New York, NY

By:/s/ Steven Zakharyayev
STEVEN ZAKHARYAYEV, ESQ
10 W 37th Street, RM 602
New York, NY 10018
(201) 716-0681
*Attorneys for Plaintiff*

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF SULLIVAN**

Index # E2022-439

---

VERTEX FUNDING LLC,

        Plaintiff,

        -against-

HCF INSURANCE AGENCY and JASON MICHAEL
ADELMAN,

        Defendant(s).

                               x

**VERIFICATION BY A PARTY**

STATE OF NEW YORK)

COUNTY OF KINGS)

BASIA GROSS, being duly sworn, hereby deposes and states the following:

      I am a(n) OWNER of VERTEX FUNDING LLC in the within action. I have read the foregoing Verified

Complaint and know the contents thereof; the same is true to my own knowledge, except as to matters therein

stated to be alleged on information and belief, and as to those matters, I believe them to be true.

      The foregoing statements are true under penalties of perjury.

                                        **BASIA GROSS**

**ACKNOWLEDGEMENT**

STATE OF _N Y_      )
                  ):
COUNTY OF _K I N G S_  )

On _21 MARCH_ 2022 before me, the undersigned, personally appeared BASIA GROSS the OWNER
of Plaintiff, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose
name is subscribed to the within instrument and acknowledged to me that he executed the same in his representative
capacity, and that by his signature on the instrument the executed the instrument.

_D. RAVS HANOV_

DOSTON RAVSHANOV
NOTARY PUBLIC
NO. 01RA6365540
My Comm. Expires
Oct 10, 2025
Qualified in Kings County
STATE OF NEW YORK

Page **1** of **18**

## VERTEX FUNDING LLC

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

This is an Agreement dated _____11/08/2021_____ by and between VERTEX FUNDING LLC. ("VF") and each merchant listed below ("Merchant").

Merchant's Legal Name: HCF INSURANCE AGENCY

D/B/A/: HCF INSURANE AGENCY          Fed ID #: ██████████

Type of Entity:

[✔] Corporation    [ ] Limited Liability Company    [ ] Limited Partnership    [ ] Limited Liability Partnership    [ ] Sole Proprietor

Business Address: 21747 ERWIN STREET, 2ND FLOOR    City: WOODLAND HILLS    State: CA    Zip: 91367

Contact Address: 19 HITCHING POST LANE    City: BELL CANYON    State: CA    Zip: 91307

E-mail Address: JASON@HCFINSURANCE.COM    Phone Number: 818-692-5284

| | |
|---|---|
| **Purchase Price**<br>*This is the amount being paid to Merchant(s) for the Receivables Purchased Amount (defined below).* | $ 600,000.00 |
| **Receivables Purchased Amount**<br>*This is the amount of Receivables (defined in Section 1 below) being sold.* | $ 870,000.00 |
| **Specified Percentage**<br>*This is the percentage of Receivables (defined below) to be delivered until the Receivables Purchased Amount is paid in full.* | 25 % |
| **Net Funds Provided**<br>*This is the net amount being paid to or on behalf of Merchant(s) after deduction of applicable fees listed in Section 2 below.* | $ 570,000.00 |
| **Estimated Daily Amount** | $ 10,875.00 |

## TERMS AND CONDITIONS

**1. Sale of Future Receipts.** Merchant(s) hereby sell, assign, and transfer to VF (making VF the absolute owner) in consideration of the funds provided ("Purchase Price") specified above, all of each Merchant's future accounts, contract rights, and other obligations arising from or relating to the payment of monies from each Merchant's customers and/or other third party payors (the "Receivables", defined as all payments made by cash, check, credit or debit card, electronic transfer, or other form of monetary payment in the ordinary course of each merchant's business), for the payment of each Merchant's sale of goods or services until the amount specified above (the "Receivables Purchased

Name: JASON MICHAEL ADELMAN    Title: OWNER/AGENT/MANAGER    Date: 11/08/2021

Page **2** of **18**

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

Amount") has been delivered by Merchant(s) to VF. Each Merchant hereby acknowledges that until the Receivables Purchased Amount has been received in full by VF, each Merchant's Receivables, up to the balance of the Receivables Purchased Amount, are the property of VF and not the property of any Merchant. Each Merchant agrees that it is a fiduciary for VF and that each Merchant will hold Receivables in trust for VF in its capacity as a fiduciary for VF.

The Receivables Purchased Amount shall be paid to VF by each Merchant irrevocably authorizing only one depositing account acceptable to VF (the "Account") to remit the percentage specified (the "Specified Percentage") of each Merchant's settlement amounts due from each transaction, until such time as VF receivespayment in full of the Receivables Purchased Amount. Each Merchant hereby authorizes VF to ACH debit the specified remittances from the Account on a daily basis as of the next business day after the date of  this  Agreement  and willprovide VF with all  required access codes and monthly bank statements. Each Merchant understands that it will be held responsible for any fees resulting from a rejected ACH attempt or an Event of Default (see Section 2). VF is not responsible for any overdrafts or rejected transactions that may result from VF's ACH debiting the Specified Percentage amounts under the terms of this Agreement.

**2.** **Additional Fees.** In addition to the Receivables Purchased Amount, each Merchant will be held responsible to VF for the following fees, where applicable:

A. $ 30,000.00  to cover underwriting and the ACH debit program, as well as related expenses. This will be deducted from payment of the Purchase Price.

B. Wire Fee - Merchant(s) shall receive funding electronically to the Account and will be charged $50.00 for a Fed Wire or $0.00 for a bank ACH. This will be deducted from payment of the Purchase Price.

C. Blocked Account/Default - $2,500.00 - If VF considers an Event of Default to have taken place under Section 34.

D. UCC Fee - $195.00 – to cover VF filing a UCC-1 financing statement to secure its interest in the Receivables Purchased Amount. A $195.00 UCC termination fee will be charged if a UCC filing is terminated.

E.  Court costs, arbitration fees, collection agency fees, attorney fees, expert fees, and  any  other expenses incurred in litigation, arbitration, or the enforcement of any of VF's legal or contractual rights against each Merchant and/or  each Guarantor, if required, as explained in other Sections of this Agreement.

**3.** **Initial Daily Installments of Estimated Amount**. The parties hereby agree that the Initial Estimated Amount is a good faith approximation of the Specified Percentage of the Merchant's average daily Receivables received each business day based upon VF's review of Merchant's recent financial performance in the underwriting process. The Receivables Purchase Amount shall be remitted via ACH debit from the Account each business day subject to the reconciliation provision contained in Section 4 below.

**4.** **Reconciliations**. If at any time during the term of this Agreement, Merchant shall experience an unforeseen decrease or increase in its daily receipts, Merchant, in its sole discretion and subject to the procedures set forth herin, can submit a written request for a reconciliation to ensure that the aggregate remittances of the daily installments of the Estimated Daily Amount for the preceding thirty (30) days equals the Specified Percentage of the Merchant's actual receipts for that time period (the "Reconciliation Period"). In order to be entitled to a reconciliation, Merchant must make a written request via email to reconciliations@VERTEXFUNDING.COM and provide bank statements from the Account, as well as any other reasonably requested documentation to evidence the Merchant's actual receipts during the Reconciliation Period. If Merchant complies with the reconciliation procedure set forth herein, VF **shall** perform the reconciliation within five (5) business days of receipt of the written request and provision of the required statements/documentation. *This provision is not self-executing and, absent Merchant's compliance with these reconciliation procedures, merchant is under no independent obligation to perform a reconciliation.* Furthermore, granting VF viewing access to the Account does not create an independent obligation for VF to monitor the account and/or perform independent reconciliations.  Nothing herein shall be deemed to: (i) provide Merchant with the right to interfere with VF's right and ability to debit the Account in the amount of the Estimated Daily Amount each business day or (ii) require VF to adjust the Estimated Daily Amount going forward.

**5.** **Prepayments.** Although there is no obligation to do so, any Merchant may prepay any amount towards the

**I have read and agree to the terms and conditions set forth above:**

Name: JASON MICHAEL ADELMAN    Title: OWNER/AGENT/MANAGER    Date: 11/08/2021

FILED: SULLIVAN COUNTY CLERK 03/21/2022 01:09 PM
NYSCEF DOC. NO. 2

INDEX NO. E2022-439
RECEIVED NYSCEF: 03/21/2022

Case 7:22-cv-03376-NSR    Document 1-1    Filed 04/26/22    Page 13 of 54

Page **3** of **18**

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

Receivables Purchased Amount. There will be no penalty for any prepayment made by any Merchant. Any Merchant may elect to terminate this Agreement by prepaying VF the amount of the balance of the Receivables Purchased Amount at that time.

**6. Merchant Deposit Agreement.** Merchant(s) shall appoint a bank acceptable to VF, to obtain electronic fund transfer services and/or "ACH" payments. Merchant(s) shall provide VF and/or its authorized agent with all of the information, authorizations, and passwords necessary to verify each Merchant's Receivables. Merchant(s) shall authorize VF and/or its agent(s) to deduct the amounts owed to VF for the Receivables as specified herein from settlement amounts which would otherwise be due to each Merchant and to pay such amounts to VF by permitting VF to withdraw the Specified Percentage by ACH debiting of the account. The authorization shall be irrevocable absent VF's written consent.

**7. Term of Agreement.** The term of this Agreement is indefinite and shall continue until VF receives the full Receivables Purchased Amount, or earlier if terminated pursuant to any provision of this Agreement. The provisions of Sections 4, 6, 7, 8, 10, 11, 13, 14, 15, 17, 18, 19, 22, 23, 28, 31, 32, 33, 34, 35, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, and 58 shall survive any termination of this Agreement.

**8. Ordinary Course of Business.** Each Merchant acknowledges that it is entering into this Agreement in the ordinary course of its business and that the payments to be made from each Merchant to VF under this Agreement are being made in the ordinary course of each Merchant's business.

**9. Financial Condition.** Each Merchant and each Guarantor (Guarantor being defined as each signatory to the Guarantee of this Agreement) authorizes VF and its agent(s) to investigate each Merchant's financial responsibility and history, and will provide to VF any bank or financial statements, tax returns, and other documents and records, as VF deems necessary prior to or at any time after execution of this Agreement. A photocopy of this authorization will be deemed as acceptable for release of financial information. VF is authorized to update such information and financial profiles from time to time as it deems appropriate.

**10. Monitoring, Recording, and Electronic Communications.** VF may choose to monitor and/or record telephone calls with any Merchant and its owners, employees, and agents. By signing this Agreement, each Merchant agrees that any call between VF and any Merchant or its representatives may be monitored and/or recorded. Each Merchant and each Guarantor grants access for VF to enter any Merchant's premises and to observe any Merchant's premises without any prior notice to any Merchant at any time after execution of this Agreement.

VF may use automated telephone dialing, text messaging systems, and e-mail to provide messages to Merchant(s), Owner(s) (Owner being defined as each person who signs this Agreement on behalf of a Merchant), and Guarantor(s) about Merchant(s)'s account. Telephone messages may be played by a machine automatically when the telephone is answered, whether answered by an Owner, a Guarantor, or someone else. These messages may also be recorded by the recipient's answering machine or voice mail. Each Merchant, each Owner, and each Guarantor gives VF permission to call or send a text message to any telephone number given to VF in connection with this Agreement and to play pre-recorded messages and/or send text messages with information about this Agreement and/or any Merchant's account over the phone. Each Merchant, each Owner, and each Guarantor also gives VF permission to communicate such information to them by e-mail. Each Merchant, each Owner, and each Guarantor agree that VF will not be liable to any of them for any such calls or electronic communications, even if information is communicated to an unintended recipient. Each Merchant, each Owner, and each Guarantor acknowledge that when they receive such calls or electronic communications, they may incur a charge from the company that provides them with telecommunications, wireless, and/or Internet services, and that VF has no liability for any such charges.

**11. Accuracy of Information Furnished by Merchant and Investigation Thereof.** To the extent set forth herein, each of the parties is obligated upon his, her, or its execution of the Agreement to all terms of the Agreement. Each Merchant and each Owner signing this Agreement represent that he or she is authorized to sign this Agreement for each Merchant, legally binding said Merchant to its obligations under this Agreement and that the information provided herein and in all of VF's documents, forms, and recorded interview(s) is true, accurate, and complete in all respects. YI

### I have read and agree to the terms and conditions set forth above:

| Name: | JASON MICHAEL ADELMAN | Title: | OWNER/AGENT/MANAGER | Date: | 11/08/2021 |
|-------|------------------------|--------|----------------------|-------|------------|

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

26 may produce a monthly statement reflecting the delivery of the Specified Percentage of Receivables from Merchant(s) to VF. An investigative report may be made in connection with the Agreement. Each Merchant and each Owner signing

this Agreement authorize VF, its agents and representatives, and any credit-reporting agency engaged by VF, to (i) investigate any references given or any other statements obtained from or about each Merchant or any of its Owners for the purpose of this Agreement, and (ii) pull credit report at any time now or for so long as any Merchant and/or Owners(s) continue to have any obligation to VF under this Agreement or for VF's ability to determine any Merchant's eligibility to enter into any future agreement with VF. Any misrepresentation made by any Merchant or Owner in connection with this Agreement may constitute a separate claim for fraud or intentional misrepresentation.

*Authorization for soft pulls:* Each Merchant and each Owner understands that by signing this Agreement, they are providing 'written instructions' to VF under the Fair Credit Reporting Act, authorizing VF to obtain information from their personal credit profile or other information from Experian, TransUnion, and Equifax. Each Merchant and each Guarantor authorizes VF to obtain such information solely to conduct a pre-qualification for credit.

*Authorization for hard pulls:* Each Merchant and each Owner understand that by signing this Agreement, they are providing 'written instructions' to VF under the Fair Credit Reporting Act, authorizing VF to obtain information from their personal credit profile or other information from Experian, TransUnion, and Equifax. Each Merchant and each Guarantor authorizes VF to obtain such information in accordance with a merchant cash advance application.

**12. Transactional History.** Each Merchant authorizes its bank to provide VF with its banking and/or credit card processing history.

**13. Indemnification.** Each Merchant and each Guarantor jointly and severally indemnify and hold harmless each Merchant's credit card and check processors (collectively, "Processor") and Processor's officers, directors, and shareholders against all losses, damages, claims, liabilities, and expenses (including reasonable attorney and expert fees) incurred by Processor resulting from (a) claims asserted by VF for monies owed to VF from any Merchant and (b) actions taken by any Processor in reliance upon information or instructions provided by VF.

**14. No Liability.** In no event will VF be liable for any claims asserted by any Merchant under any legal theory for lost profits, lost revenues, lost business opportunities, exemplary, punitive, special, incidental, indirect, or consequential damages, each of which is waived by each Merchant and each Guarantor.

**15. Sale of Receivables.** Each Merchant and VF agree that the Purchase Price under this Agreement is in exchange for the Receivables Purchased Amount and that such Purchase Price is not intended to be, nor shall it be construed as a loan from VF to any Merchant. VF is entering into this Agreement knowing the risks that each Merchant's business may decline or fail, resulting in VF not receiving the Receivables Purchased Amount. EachMerchant agrees that the Purchase Price in exchange for the Receivables pursuant to this Agreement equals the fair market value ofsuch Receivables. VF has purchased and shall own all the Receivables described in this Agreement up to the full Receivables Purchased Amount as the Receivables are created. Payments made to VF in respect to the full amount of the Receivables shall be conditioned upon each Merchant's sale of products and services and the payment therefor by each Merchant's customers in the manner provided in this Agreement. Although certain jurisdictions requirethe disclosure of an Annual Percentage Rate or APR in connection with this Agreement, those disclosures do not change the fact that the transaction encompassed by this Agreement is not a loan and does not have an interest rate.

**16. Power of Attorney.** Each Merchant irrevocably appoints VF as its agent and attorney-in-fact with full authority to take any action or execute any instrument or document to settle all obligations due to VF, or, if VF considers an Event of Default to have taken place under Section 34, to settle all obligations due to VF from each Merchant, including without limitation (i) to obtain and adjust insurance; (ii) to collect monies due or to become due under or in respect of  anyof the Collateral (which is defined in Section 33); (iii) to receive, endorse and collect  any  checks, notes, drafts, instruments, documents, or chattel paper in connection with clause (i) or clause (ii) above; (iv) to sign each Merchant's name on any invoice, bill of lading, or assignment directing customers or account debtors to make payment directly to VF; and (v) to file any claims or take any action or institute any proceeding which VF may deem necessary for the collection  of any of the unpaid Receivables Purchased Amount from the Collateral, or otherwise to enforce its rights with respect to payment of the Receivables Purchased Amount.

**I have read and agree to the terms and conditions set forth above:**

| | | | | | |
|---|---|---|---|---|---|
| Name: | JASON MICHAEL ADELMAN | Title: | OWNER/AGENT/MANAGER | Date: | 11/08/2021 |

FILED: SULLIVAN COUNTY CLERK 03/21/2022 01:09 PM
NYSCEF DOC. NO. 2

INDEX NO. E2022-439
RECEIVED NYSCEF: 03/21/2022

Case 7:22-cv-03376-NSR    Document 1-1    Filed 04/26/22    Page 15 of 54

Page **5** of **18**

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

**17.  Protections Against Default.** The following Protections 1 through 8 may be invoked by VF, immediately and without notice to any Merchant in the event:

(a) Any Merchant takes any action to discourage the use of methods of payment ordinarily and customarily used by its customers or permits any event to occur that could have an adverse effect on the use, acceptance, or authorization of checks and credit cards for the purchase of any Merchant's services and products;

(b) Any Merchant changes its arrangements with any Processor in any way that is adverse to VF;

(c) Any Merchant changes any Processor through which the Receivables are settled to another electronic check and/or credit card processor or permits any event to occur that could cause diversion of any Merchant's check and/or credit card transactions to another such processor;

(d) Any Merchant interrupts the operation of its business (other than adverse weather, natural disasters, or acts of God) or transfers, moves, sells, disposes, or otherwise conveys its business or assets without (i) the express prior written consent of VF and (ii) the written agreement of any purchaser or transferee to the assumption of all of any Merchant's obligations under this Agreement pursuant to documentation satisfactory to VF; or

(e) Any Merchant takes any action, fails to take any action, or offers any incentive—economic or otherwise—the result of which will be to induce any customer or customers to pay for any Merchant's goods or services with any means other than checks and/or credit cards that are settled through Processor. These protections are in addition to any other remedies available to VF at law, in equity, or otherwise available pursuant to this Agreement.

(f) VF considers any Event of Default listed in Section 34 to have taken place.

Protection 1: The full uncollected Receivables Purchased Amount plus all fees due under this Agreement may become due and payable in full immediately.

Protection 2. VF may file the affidavit of confession of judgment (the "COJ"), where allowed by applicable law, executed by the Guarantor, individually and on behalf of the Merchant, jointly and severally, in connection with this Agreement, for the amount(s) set forth in the COJ.

Protection 3. VF may enforce the provisions of the Guarantee against Guarantor.

Protection 4. VF may enforce its security interest in the Collateral identified in Section 33.

Protection 5. VF may proceed to protect and enforce its rights and remedies by litigation or arbitration. Protection 5. If requested by VF, Merchant shall deliver to VF an executed assignment of lease of each Merchant's premises in favor of VF. Upon breach of any provision in this Section 17, VF may exercise its rights under such assignment of lease.

Protection 6. VF may debit any Merchant's depository accounts wherever situated by means of ACH debit or electronic or facsimile signature on a computer-generated check drawn on any Merchant's bank account or otherwise, in an amount consistent with the terms of this Agreement.

Protection 8. VF will have the right, without waiving any of its rights and remedies and without notice to any Merchant and/or Guarantor, to notify each Merchant's credit card and/or check processor of the sale of Receivables hereunder and to direct such credit card processor to make payment to VF of all or any portion of the amounts received by such credit card processor on behalf of each Merchant. Each Merchant hereby grants to VF an irrevocable power-of-attorney, which power-of-attorney will be coupled with an interest, and hereby appoints VF and its representatives as each Merchant's attorney-in-fact to take any and all action necessary to direct such new or additional credit card and/or check processor to make payment to VF as contemplated by this Section.

**18.  Protection of Information.** Each Merchant and each person signing this Agreement on behalf of each Merchant and/or as Owner, in respect of himself or herself personally, authorizes VF to disclose information concerning each Merchant, Owner and/or Guarantor's credit standing and business conduct to agents, affiliates, subsidiaries, and credit reporting bureaus. Each Merchant, Guarantor, and Owner hereby waives to the maximum extent permitted by law any claim for damages against VF or any of its affiliates relating to any (i) investigation undertaken by or on behalf of VF as permitted by this Agreement or (ii) disclosure of information as permitted by this Agreement.

**19.  Confidentiality.** Each Merchant understands and agrees that the terms and conditions of the products and services offered by VF, including this Agreement and any other VF documents (collectively, "Confidential Information") are proprietary and confidential information of VF. Accordingly, unless disclosure is required by law orcourt order, Merchant(s) shall not disclose Confidential Information of VF to any person other than an attorney,accountant, financial advisor, or employee of any Merchant who needs to know such information for the purpose of advising any Merchant ("Advisor"), provided such Advisor uses such information solely for the purpose of advising any Merchant and first agrees in writing to be bound by the terms of this Section 19. **I have read and agree to the terms and conditions set forth above:**

Name: | JASON MICHAEL ADELMAN | Title: | OWNER/AGENT/MANAGER | Date: | 11/08/2021

FILED: SULLIVAN COUNTY CLERK 03/21/2022 01:09 PM
NYSCEF DOC. NO. 2

INDEX NO. E2022-439
RECEIVED NYSCEF: 03/21/2022

Case 7:22-cv-03376-NSR    Document 1-1    Filed 04/26/22    Page 16 of 54

Page 6 of 18

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

**20. D/B/As.** Each Merchant hereby acknowledges and agrees that VF may be using "doing business as" or"d/b/a" names in connection with various matters relating to the transaction between VF and each Merchant, including the filing of UCC-1 financing statements and other notices or filings.

**21. Financial Condition and Financial Information.** Each Merchant represents, warrants, and covenants that its bank and financial statements, copies of which have been furnished to VF, and future statements which will befurnished hereafter at the request of VF, fairly represent the financial condition of each Merchant at such dates, and that since those dates there have been no material adverse changes, financial or otherwise, in such condition, operation, or ownership of any Merchant. Each Merchant has a continuing affirmative obligation to advise VF of any material adverse change in its financial condition, operation, or ownership.

**22. Governmental Approvals.** Each Merchant represents, warrants, and covenants that it is in compliance and shall comply with all laws and has valid permits, authorizations, and licenses to own, operate, and lease its properties and to conduct the business in which it is presently engaged.

**23. Authorization.** Each Merchant represents, warrants, and covenants that it and each person signing this Agreement on behalf of each Merchant has full power and authority to incur and perform the obligations under this Agreement, all of which have been duly authorized.

**24. Insurance.** Each Merchant represents, warrants, and covenants that it will maintain business-interruption insurance naming VF as loss payee and additional insured in amounts and against risks as are satisfactory to VF and shall provide VF proof of such insurance upon request.

**25. Electronic Check Processing Agreement.** Each Merchant represents, warrants, and covenants that it will not, without VF's prior written consent, change its Processor, add terminals, change its financial institution or bank account, or take any other action that could have any adverse effect upon any Merchant's obligations under this Agreement.

**26. Change of Name or Location.** Each Merchant represents, warrants, and covenants that it will not conduct its business under any name other than as disclosed to VF or change any place(s) of its business without prior written consent from VF.

**27. Estoppel Certificate.** Each Merchant represents, warrants, and covenants that it will, at any time, and from time to time, upon at least two day's prior notice from VF to that Merchant, execute, acknowledge, and deliver to VF and/ or to any other person or entity specified by VF, a statement certifying that this Agreement is unmodified and in full force and effect (or, if there have been modifications, that the same is in full force and effect as modified and stating the modifications) and stating the dates which the Receivables Purchased Amount or any portion thereof have been paid.

**28. No Bankruptcy.** Each Merchant represents, warrants, and covenants that as of the date of this Agreement, it does not contemplate and has not filed any petition for bankruptcy protection under Title 11 of the United States Code and there has been no involuntary petition brought or pending against any Merchant. Each Merchant further warrants that it does not anticipate filing any such bankruptcy petition and it does not anticipate that an involuntary petition will be filed against it. Each Merchant further warrants that there will be no statutory presumption that it would have been insolvent on the date of this Agreement.

**29. Unencumbered Receivables.** Each Merchant represents, warrants, and covenants that it has good, complete, and marketable title to all Receivables, free and clear of any and all liabilities, liens, claims, changes, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges, and encumbrances of any kind or nature whatsoever or any other rights or interests that may be inconsistent with this Agreement or adverse to the interests of VF, other than any for which VF has actual or constructive knowledge as of the date of this Agreement.

**I have read and agree to the terms and conditions set forth above:**

Name JASON MICHAEL ADELMAN    Title: OWNER/AGENT/MANAGER    Date: 11/08/2021

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

**30. Stacking.** Each Merchant represents, warrants, and covenants that it will not enter into with any party other than VF any arrangement, agreement, or commitment that relates to or involves the Receivables, whether in the form of a purchase of, a loan against, collateral against, or the sale or purchase of credits against Receivables without the prior written consent of VF. The Merchant(s) will be subject to a $5,000.00 Stacking Fee.

**31. Business Purpose.** Each Merchant represents, warrants, and covenants that it is a valid business in good standing under the laws of the jurisdictions in which it is organized and/or operates, and each Merchant is entering into this Agreement for business purposes and not as a consumer for personal, family, or household purposes.

**32. Default Under Other Contracts.** Each Merchant represents, warrants, and covenants that its execution of and/or performance under this Agreement will not cause or create an event of default by any Merchant under any contract with another person or entity.

**33. Security Interest.** To secure each Merchant's payment and performance obligations to VF under this Agreement and any future agreement with VF, each Merchant hereby pledges, assigns to VF, and grants to VF a security interest in, the collateral(the "Collateral"), that is defined as collectively: (a) all accounts, including  without limitation, all deposit  accounts,

accounts-receivable, and other receivables, chattel paper, documents, equipment, general intangibles, instruments, and inventory, as those terms are defined by Article 9 of the Uniform Commercial Code (the "UCC"), now or hereafter owned or acquired by any Merchant; and (b) all proceeds, as that term is defined by Article 9 of the UCC. The partiesacknowledge and agree that any security interest granted to VF under any other agreement between any Merchant or

Guarantor and VF (the "Cross-Collateral") will secure the obligations hereunder and under this Agreement. Negative Pledge: Each Merchant agrees not to create, incur, assume, or permit to exist, directly or indirectly, any lien on or with respect to any of the Collateral or the Cross-Collateral, as applicable.

Each Merchant agrees to execute any documents or take any action in connection with this Agreement as VF deems necessary to perfect or maintain VF's first priority security interest in the Collateral and the Cross-Collateral, including the execution of any account control agreements. Each Merchant hereby authorizes VF to file any financing statements deemed necessary by VF to perfect or maintain VF's security interest, which financing statements may contain notification that each Merchant has granted a negative pledge to VF with respect to the Collateral and the

Cross-Collateral, and that any subsequent lienor may be tortiously interfering with VF's rights. Each Merchant shall be liable for and VF may charge and collect all costs and expenses, including but not limited to attorney fees, which may be incurred by VF in protecting, preserving, and enforcing VF's security interest and rights. Each Merchant further acknowledges that VF may use another legal name and/or D/B/A or an agent when designating the Secured Party when VF files the above-referenced financing statement(s).

**34. Events of Default.** An "Event of Default" may be considered to have taken place if any of the following occur:
(1) Any Merchant violates any term or covenant in this Agreement;
(2) Any representation or warranty by any Merchant in any Agreement with VF that has not been terminated proves to have been incorrect, false, or misleading in any material respect when made;
(3)  Any Merchant fails to provide VF with written notice of any material change in its financial condition, operation, or ownership within seven days thereafter (unless a different notice period is specifically provided for elsewhere in this Agreement;
(4) the sending of notice of termination by any Merchant or Guarantor;
(5) Any Merchant transports, moves, interrupts, suspends, dissolves, or terminates its business without the prior written consent of VF other than a bankruptcy filing;
(6) Any Merchant transfers or sells all or substantially all of its assets without the prior written consent of VF;
(7) Any Merchant makes or sends notice of any intended bulk sale or transfer by any Merchant without the prior written consent of VF;
(8) Any Merchant uses multiple depository accounts without the prior written consent of VF;
(9) Any Merchant changes the Account without the prior written consent of VF;
(10)    VF is not provided with updated login or password information for the Account within one business Day after any such change is made by any Merchant; or
(11)      Four (4) or more ACH transactions attempted by VF are rejected by Merchant's bank in one calendar month.

**I have read and agree to the terms and conditions set forth above:**

Name: JASON MICHAEL ADELMAN   Title: OWNER/AGENT/MANAGER   Date: 11/08/2021

FILED: SULLIVAN COUNTY CLERK 03/21/2022 01:09 PM
NYSCEF DOC. NO. 2
INDEX NO. E2022-439
RECEIVED NYSCEF: 03/21/2022

Case 7:22-cv-03376-NSR    Document 1-1    Filed 04/26/22    Page 18 of 54

Page **8** of 18

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

(12) Any Merchant fails to send bank statements, merchant account statements, or bank login information for the Account within two business days after a written request for same is made by VF;

(13) Any Merchant performs any act that reduces the value of any Collateral granted under this Agreement;

(14) Any Merchant fails to deposit its Receivables into the Account;

(15) Any Merchant causes any ACH debit to the Account by VF to be blocked or stopped without providing any advance written notice to VF, which notice may be given by e-mail to reconciliations@VERTEXFUNDING.COM; or

(16) Any Merchant prevents VF from collecting any part of the Receivables Purchased Amount;

(17) Any Merchant causes any ACH debit to the Account to be stopped or otherwise returned that would result in an ACH Return Code of R08, R10, or R29 and that Merchant does not within two business days thereafter provide VF with written notice thereof explaining why that Merchant caused the ACH debit to be stopped or otherwise returned, which notice may be given by e-mail to reconciliations@VERTEXFUNDING.COM; or

(18) Any Merchant defaults under any of the terms, covenants, and conditions of any other agreement with VF.

**35. Remedies.** In case any Event of Default occurs and is not waived, VF may proceed to protect and enforce its rights or remedies by suit in equity or by action at law, or both, whether for the specific performance of any covenant, agreement, or other provision contained herein, or to enforce the discharge of each Merchant's obligations hereunder, or any other legal or equitable right or remedy. All rights, powers, and remedies of VF in connection with this Agreement, including each Protection listed in Section 17, may be exercised at any time by VF after the occurrence of an Event of Default, are cumulative and not exclusive, and will be in addition to any other rights, powers, or remedies provided by law or equity. In addition to the foregoing, in case any Event of Default occurs and is not waived, VF will be entitled to the issuance of an injunction, restraining order, or other equitable relief in VF's favor, subject to court or arbitrator approval, restraining each Merchant's accounts and/or receivables up to the amount due to VF as a result of the Event of Default, and each Merchant will be deemed to have consented to the granting of an application for the same to any court or arbitral tribunal of competent jurisdiction without any prior notice to any Merchant or Guarantor and without VF being required to furnish a bond or other undertaking in connection with the application.

**36. Required Notifications.** Each Merchant is required to give VF written notice at least one day prior to any filing under Title 11 of the United States Code. Merchant(s) are required to give VF at least seven days' written notice prior to the closing of any sale of all or substantially all of any Merchant's assets or stock.

**37. Assignment.** This Agreement shall be binding upon and inure to the benefit of the parties and their respective successors and assigns, except that Merchant(s) shall not have the right to assign its rights hereunder or any interest herein without the prior written consent of VF, which consent may be withheld in VF's sole discretion. VF may assign, transfer, or sell its rights under this Agreement, including, without limitation, its rights to receive the Receivables Purchased   Amount, and its rights under Section 33 of this Agreement, the Guarantee, and any other agreement,instrument, or document executed in connection with the transactions contemplated by this Agreement (a "Related Agreement"), or delegate its duties hereunder or thereunder, either in whole or in part. From and after the effective date of any such assignment or transfer by VF, whether or not any Merchant has actual notice thereof, this  Agreement  andeach Related Agreement shall be deemed amended and modified (without the need for any further action on the part of any Merchant or VF) such that the assignee shall be deemed a  party to this Agreement and any such Related Agreement and, to the extent provided in the assignment document between VF and such assignee (the "Assignment Agreement"), have the rights and obligations of VF under this Agreement and such Related Agreements with respect to the portion of the Receivables Purchased Amount set forth in such Assignment Agreement, including but not limited to rights in the Receivables, Collateral and Additional Collateral, the benefit of each Guarantor's guaranty regarding the full and prompt performance of every obligation that is a subject of the Guarantee, VF's rights under Section 17 of this Agreement (Protections Against Default), and to receive damages from any Merchant following a breach of this Agreement by any  Merchant.  In  connection  with  such  assignment, VF may disclose all information that VF hasrelating to any Merchant or its business. Each Merchant agrees to acknowledge any such assignment in writing upon VF's request.

**38. Notices.** All notices pursuant to this Agreement shall be made by electronic mail. If to the Merchant or Guarantor,  to  the  email  address  specified  on  the  first  page  of  this  Agreement.  If  to  VF,  to reconciliations@VERTEXFUNDING.COM.

**39. Choice of Law.** Each Merchant acknowledges and agrees that this Agreement was made in the State of New York, that the Purchase Price is being paid by VF in the State of New York, that the Receivables Purchased Amount is being delivered to VF in the State of New York, and that the State of New York has a reasonable relationship to the

| Name: | JASON MICHAEL ADELMAN | Title: | OWNER/AGENT/MANAGER | Date: | 11/08/2021 |
|---|---|---|---|---|---|

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

transactions encompassed by this Agreement. This Agreement and the relationship between VF, each Merchant, and each Guarantor will be governed by and construed in accordance with the laws of the State of New York, without regard to any applicable principles of conflict of laws.

**40. Forum and Venue Selection.** Any lawsuit, action or proceeding arising out of or in connection with this Agreement shall be instituted exclusively in any court sitting in the State of New York (the "Acceptable Forums"). The parties agree that the Acceptable Forums are convenient, submit to the jurisdiction of the Acceptable Forums, and waive any and all objections to the jurisdiction or venue of the Acceptable Forums. If any litigation is initiated in any other venue or forum, the parties waive any right to oppose any motion or application made by any party to transfer such litigation to an Acceptable Forum. In addition to the Acceptable Forums, any action or proceeding to enforce a judgment or arbitration award against any Merchant or Guarantor or to restrain or collect any amount due to VF may be commenced and maintained in any other court of competent jurisdiction.

**41. Jury Waiver.** The parties agree to waive trial by jury in any dispute between them.

**42. Counterclaim Waiver.** In any litigation or arbitration commenced by VF, each Merchant and each Guarantor will not be permitted to interpose any counterclaim.

**43. Statutes of Limitations.** Each Merchant and each Guarantor agree that any claim that is  not asserted against VF within one year of its accrual will be time barred.

**44. Costs.** Each Merchant and each Guarantor must pay all of VF's reasonable costs associated with a breach by any Merchant of the covenants in this Agreement and the enforcement thereof, including but not limited to collection agency fees, attorney fees, which may include a contingency fee of up to 33% of the amount claimed, expert witness fees, and costs of suit.

**45. Prejudgment and Postjudgment Interest.** If VF becomes entitled to the entry of a judgment against any Merchant or any Guarantor, then VF will be entitled to the recovery of prejudgment interest at a rate of 24% per annum (or 16% per annum if any Merchant is a sole proprietorship), or the maximum rate permitted by applicable law if less, and upon entry of any such judgment, it will accrue interest at a postjudgment rate of 24% per annum (or 16% per annum if any Merchant is a sole proprietorship), or the maximum rate permitted by applicable law if less, which rate will govern over the statutory rate of interest up until actual satisfaction of the judgment.

**46. Legal Fees.** If VF prevails in any litigation or arbitration with any Merchant or any Guarantor, then that Merchant and/or Guarantor must pay VF's reasonable attorney fees, which may include a contingency fee of up to 33% of the amount claimed.

**47. Class Action Waiver.** VF, each Merchant, and each Guarantor agree that they may bring claims against each other relating to this Agreement only in their individual capacities, and not as a plaintiff or class action member inany purported class or representative proceedings.

**I have read and agree to the terms and conditions set forth above:**

Name: | JASON MICHAEL ADELMAN | Title: | OWNER/AGENT/MANAGER | Date: | 11/08/2021

FILED: SULLIVAN COUNTY CLERK 03/21/2022 01:09 PM
NYSCEF DOC. NO. 2
INDEX NO. E2022-439
RECEIVED NYSCEF: 03/21/2022
Case 7:22-cv-03376-NSR    Document 1-1    Filed 04/26/22    Page 20 of 54

Page 10 of 18

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

**48. ARBITRATION. THE PARTIES ACKNOWLEDGE AND AGREE THAT, PROVIDED THAT NO SUIT, ACTION OR PROCEEDING (INCLUDING WITHOUT LIMITATION FILING OF AN AFFIDAVIT OF CONFESSION OF JUDGMENT) HAS BEEN ALREADY COMMENCED IN CONNECTION WITH ANY MATTER ARISING OUT OF OR RELATED TO THE TRANSACTION CONTEMPLATED BY THIS AGREEMENT, EACH VF, MERCHANT, AND ANY GUARANTOR OF SELLER SHALL HAVE THE RIGHT TO REQUEST THAT ALL DISPUTES AND CLAIMS ARISING OUT OF OR RELATING TO THE CONSTRUCTION AND INTERPRETATION OF THIS AGREEMENT, ARE SUBMITTED TO ARBITRATION. THE PARTY SEEKING ARBITRATION SHALL FIRST SEND A WRITTEN NOTICE OF INTENT TO ARBITRATE TO ALL OTHER PARTIES, BY CERTIFIED MAIL UPON SENDING OF SUCH NOTICE, A PARTY REQUESTING ARBITRATION MAY COMMENCE AN ARBITRATION PROCEEDING WITH THE AMERICAN ARBITRATION ASSOCIATION ("AAA") OR NATIONAL ARBITRATION FORUM ("NAF"). EACH MERCHANT, GUARANTOR AND VF SHALL PAY THEIR OWN ATTORNEYS' FEES INCURRED DURING THE ARBITRATION PROCEEDING. THE PARTY INITIATING THE ARBITRATION SHALL PAY ANY ARBITRATION FILING FEE, ADMINISTRATION FEE AND ARBITRATOR'S FEE.**

In case any Event of Default occurs and is not waived, eachMerchant and each Guarantor consents to VF making an application to the arbitrator, without notice to any Merchant orany Guarantor, for the issuance of an injunction, restraining order, or other equitable relief in VF's favor, subject to courtor arbitrator approval, restraining each Merchant's accounts and/or receivables up to the amount due to VF as a result ofthe Event of Default.

**49. Service of Process.** Each Merchant and each Guarantor consent to service of process and legal notices made by First Class or Priority Mail delivered by the United States Postal Service and addressed to the Contact Address set forth on the first page of this Agreement or any other address(es) provided in writing to VF by any Merchant or any Guarantor, and unless applicable law or rules provide otherwise, any such service will be deemed complete upon dispatch. Each Merchant and each Guarantor agrees that it will be precluded from asserting that it did not receive service of process or any other notice mailed to the Contact Address set forth on the first page of this Agreement if it does not furnish a certified mail return receipt signed by VF demonstrating that VF was provided with notice of a change in the Contact Address.

**50. Survival of Representation, etc.** All representations, warranties, and covenants herein shall survive the execution and delivery of this Agreement and shall continue in full force until all obligations under this Agreement shall have been satisfied in full and this Agreement shall have terminated.

**51. Waiver.** No failure on the part of VF to exercise, and no delay in exercising, any right under this Agreement, shall operate as a waiver thereof, nor shall any single or partial exercise of any right under this Agreement preclude any other or further exercise thereof or the exercise of any other right. The remedies provided hereunder are cumulative and not exclusive of any remedies provided by law or equity.

**52. Independent Sales Organizations/Brokers.** Each Merchant and each Guarantor acknowledge that it may have been introduced to VF by or received assistance in entering into this Agreement or its Guarantee from an independent sales organization or broker ("ISO"). Each Merchant and each Guarantor agree that any ISO is separate from and is not an agent or representative of VF. Each Merchant and each Guarantor acknowledge that VF is not bound by any promises or greements made by any ISO that are not contained within this Agreement. Each Merchantand each Guarantor exculpate from liability and agree to hold harmless and indemnify VF and its officers, directors, members, shareholders, employees, and agents from and against all losses, damages, claims, liabilities, and expenses

**I have read and agree to the terms and conditions set forth above:**

| Name: | JASON MICHAEL ADELMAN | Title: | OWNER/AGENT/MANAGER | Date: | 11/08/2021 |
|---|---|---|---|---|---|

FILED: SULLIVAN COUNTY CLERK 03/21/2022 01:09 PM
INDEX NO. E2022-439
NYSCEF DOC. NO. 2
Case 7:22-cv-03376-NSR    Document 1-1    Filed 04/26/22    Page 21 of 54
RECEIVED NYSCEF: 03/21/2022

Page **11** of 18

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

(including reasonable attorney and expert fees) incurred by any Merchant or any Guarantor resulting from any act or omission by any ISO. Each Merchant and each Guarantor acknowledge that any fee that they paid to any ISO for its services is separate and apart from any payment under this Agreement. Each Merchant and each Guarantor acknowledge that VF does not in any way require the use of an ISO and that any fees charged by any ISO are not required as a condition or incident to this Agreement.

**53. Modifications; Agreements.** No modification, amendment, waiver, or consent of any provision of this Agreement shall be effective unless the same shall be in writing and signed by all parties.

**I have read and agree to the terms and conditions set forth above:**

| Name | JASON MICHAEL ADELMAN | Title: | OWNER/AGENT/MANAGER | Date: | 11/08/2021 |
|------|----------------------|--------|---------------------|-------|------------|

FILED: SULLIVAN COUNTY CLERK 03/21/2022 01:09 PM
NYSCEF DOC. NO. 2
INDEX NO. E2022-439
RECEIVED NYSCEF: 03/21/2022

Case 7:22-cv-03376-NSR   Document 1-1   Filed 04/26/22   Page 22 of 54

Page 12 of 18

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

**54. Severability.** If any provision of this Agreement is deemed invalid or unenforceable as written, it will be construed, to the greatest extent possible, in a manner which will render it valid and enforceable, and any limitation on the scope or duration of any such provision necessary to make it valid and enforceable will be deemed to be part thereof. If any provision of this Agreement is deemed void, all other provisions will remain in effect.

**55. Headings.** Headings of the various articles and/or sections of this Agreement are for convenience only and do not necessarily define, limit, describe, or construe the contents of such articles or sections.

**56. Attorney Review.** Each Merchant acknowledges that it has had an opportunity to review this Agreement and all addenda with counsel of its choosing before signing the documents or has chosen not to avail itself of the opportunity to do so.

**57. Entire Agreement.** This Agreement, inclusive of all addenda, if any, executed simultaneously herewith constitutes the full understanding of the parties to the transaction herein and may not be amended, modified, or canceled except in writing signed by all parties. Should there arise any conflict between this Agreement and any other document preceding it, this Agreement will govern. This Agreement does not affect any previous agreement between the parties unless such an agreement is specifically referenced herein. This Agreement will not be affected by any subsequent agreement between the parties unless this Agreement is specifically referenced therein. VF will not be permitted to enforce any of its rights under this Agreement if so expressed by in writing by Gene Rosen's Law Firm.

**58. Counterparts; Fax and Electronic Signatures.** This Agreement may be executed electronically and in counterparts. Facsimile and electronic copies of this Agreement will have the full force and effect of an original.

### EACH UNDERSIGNED HEREBY ACCEPTS THE TERMS OF THIS AGREEMENT

**FOR THE MERCHANT/OWNER (#1)**

By: JASON MICHAEL ADELMAN | OWNER/AGENT/MANAGER | _____
    (Print Name) | (Print Title) | (Signature)

SS# ████████ | Driver License Number _____

**FOR THE MERCHANT/OWNER (#2)**

By: _____ | _____ | _____
    (Print Name) | (Print Title) | (Signature)

SS# _____ | Driver License Number _____

Approved for VERTEX FUNDING LLC by: _____

FILED: SULLIVAN COUNTY CLERK 03/21/2022 01:09 PM
NYSCEF DOC. NO. 2

Case 7:22-cv-03376-NSR    Document 1-1    Filed 04/26/22    Page 23 of 54

INDEX NO. E2022-439

RECEIVED NYSCEF: 03/21/2022

Page 13 of18

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

## GUARANTEE

**G1. Personal Guarantee of Performance.** This is a personal guaranty of performance, dated 11/08/2021 of the Standard Merchant Cash Advance Agreement, dated 11/08/2021 ("Agreement"), inclusive of all addenda, if any, executed simultaneously therewith, by and between VERTEX FUNDING LLC.("VF") and HCF INSURANCE AGENCY ("Merchant"). Each undersigned Guarantor hereby guarantees each Merchant's performance of all of the representations, warranties, and covenants made by each Merchant to VF in the Agreement, inclusive of all addenda, if any, executed simultaneously herewith, as the Agreement may be renewed, amended, extended, or otherwise modified (the "Guaranteed Obligations"). Each Guarantor's obligations are due at the time of any breach by any Merchant of any representation, warranty, or covenant made by any Merchant in the Agreement.

**G2. Communications.** VF may use automated telephone dialing, text messaging systems, and e-mail to provide messages to Guarantor(s) about Merchant(s)'s account. Telephone messages may be played by a machine automatically when the telephone is answered, whether answered by an Owner, a Guarantor, or someoneelse. These messages may also be recorded by the recipient's answering machine or voice mail. Each Guarantorgives VF permission to call or send a text message to any telephone number given to VF in connection with this Agreement and to play pre-recorded messages and/or send text messages with information about this Agreement and/or any Merchant's account over the phone. Each Guarantor also gives VF permission to communicate such information to them by e-mail. Each Guarantor agrees that VF will not be liable to any of them for any such calls or electronic communications, even if information is communicated to an unintended recipient. Each Guarantor acknowledges that when they receive such calls or electronic communications, they may incur a charge from the company that providesthem with telecommunications, wireless, and/or Internet services, and that VF has no liability for any such charges.

**G3. Guarantor Waivers.** If VF considers any Event of Default to have taken place under the Agreement, then VF may enforce its rights under this Guarantee without first seeking to obtain payment from any Merchant, any other guarantor, or any Collateral, Additional Collateral, or Cross-Collateral VF may hold pursuant to this Guarantee or any other agreement or guarantee. VF does not have to notify any Guarantor of any of the following events and Guarantor(s) will not be released from its obligations under this Guarantee even if it is not notified of: (i) any Merchant's failure to pay timely any amount owed under the Agreement; (ii) any adverse change in any Merchant's financial condition or business; (iii) any sale or other disposition of any collateral securing the Guaranteed Obligations or any other guarantee of the Guaranteed Obligations; (iv) VF's acceptance of the Agreement with any Merchant; and (v) any renewal, extension, or other modification of the Agreement or any Merchant's other obligations to VF. In addition, VF may take any of the following actions without releasing any Guarantor from any obligations under this Guarantee: (i) renew, extend, or otherwise modify the Agreement or any Merchant's other obligations to VF; (ii) ifthere is more than one Merchant, release a Merchant from its obligations to VF such that at least one Merchant remains obligated to VF; (iii) sell, release, impair, waive, or otherwise fail to realize upon any collateral securing the Guaranteed Obligations or any other guarantee of the Guaranteed Obligations; and (iv) foreclose on any collateral securing the Guaranteed Obligations or any other guarantee of the Guaranteed Obligations in a manner that impairsor precludes the right of Guarantor to obtain reimbursement for payment under the Agreement. Until the Receivables Purchased Amount and each Merchant's other obligations to VF under the Agreement and this Guarantee are paid in full, each Guarantor shall not seek reimbursement from any Merchant or any other guarantor for any amounts paid by it under the Agreement. Each Guarantor permanently waives and shall not seek to exercise anyof the following rights that it may have against any Merchant, any other guarantor, or any collateral provided by any Merchant or any other guarantor, for any amounts paid by it or acts performed by it under this Guarantee: (i) subrogation; (ii) reimbursement; (iii) performance; (iv) indemnification; or (v) contribution.

**G4. Joint and Several Liability.** The obligations hereunder of the persons or entities constituting each Guarantor under this Guarantee are joint and several.

**G5. Injunctive Relief.** In case any Event of Default occurs and is not waived, VF will be entitled to the issuance of an injunction, restraining order, or other equitable relief in VF's favor, subject to court or arbitrator approval,restraining each Guarantor's accounts and/or receivables up to the amount due to VF as a result of the Event of

**I have read and agree to the terms and conditions set forth above:**

Name: JASON MICHAEL ADELMAN   Title: OWNER/AGENT/MANAGER   Date: 11/08/2021

FILED: SULLIVAN COUNTY CLERK 03/21/2022 01:09 PM
NYSCEF DOC. NO. 2
INDEX NO. E2022-439
RECEIVED NYSCEF: 03/21/2022

Case 7:22-cv-03376-NSR    Document 1-1    Filed 04/26/22    Page 24 of 54

Page **14** of**18**

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

Default, and each Guarantor will be deemed to have consented to the granting of an application for the same to any court or arbitral tribunal of competent jurisdiction without any prior notice to any Merchant or Guarantor and without VF being required to furnish a bond or other undertaking in connection with the application.

**G6. Choice of Law.** Each Guarantor acknowledges and agrees that the Agreement and this Guarantee were made in the State of New York, that the Purchase Price is being paid by VF in the State of New York, that the Receivables Purchased Amount is being delivered to VF in the State of New York, and that the State of New York has a reasonable relationship to the transactions encompassed by the Agreement and this Guarantee. ThisGuarantee and the relationship between VF, each Merchant, and each Guarantor will be governed by and construedin accordance with the laws of the State of New York, without regard to any applicable principles of conflict of laws.

**G7. Forum and Venue Selection.** Any litigation relating to this Agreement or this Guarantee or involving VF on one side and any Merchant or any Guarantor on the other must be commenced and maintained in any court located in the State of New York (the "Acceptable Forums"). The parties agree that theAcceptable Forums are convenient, submit to the jurisdiction of the Acceptable Forums, and waive any and all objections to the jurisdiction or venue of the Acceptable Forums. If any litigation is initiated in any other venue or forum, the parties waive any right to oppose any motion or application made by any party to transfer such litigation to an Acceptable Forum.. In addition to the Acceptable Forums, any action or proceeding to enforce a judgment or arbitration award against any Merchant or Guarantor or to restrain or collect any amount due to VF may be commenced and maintained in any other court of competent jurisdiction.

**G8. Jury Waiver.** Each Guarantor agrees to waive trial by jury in any dispute with VF.

**G9. Counterclaim Waiver.** In any litigation or arbitration commenced by VF, each Merchant and each Guarantor will not be permitted to interpose any counterclaim.

**G10. Statutes of Limitations.** Each Merchant and each Guarantor agree that any claim that is not asserted against VF within one year of its accrual will be time barred.

**G11. Costs.** Each Merchant and each Guarantor must pay all of VF's reasonable costs associated with a breach by any Merchant of the covenants in this Agreement or this Guarantee and the enforcement thereof, including but not limited to collection agency fees, expert witness fees, and costs of suit.

**G12. Prejudgment and Postjudgment Interest.** If VF becomes entitled to the entry of a judgment against any Merchant or any Guarantor, then VF will be entitled to the recovery of prejudgment interest at a rate of 24% per annum (or 16% per annum if any Merchant is a sole proprietorship), or the maximum rate permitted by applicable law if less, and upon entry of any such judgment, it will accrue interest at a postjudgment rate of 24% per annum (or 16% per annum if any Merchant is a sole proprietorship), or the maximum rate permitted by applicable law if less, which rate will govern over the statutory rate of interest up until actual satisfaction of the judgment.

**G13. Legal Fees.** If VF prevails in any litigation or arbitration with any Merchant or any Guarantor, then that Merchant and/or Guarantor must pay VF's reasonable attorney fees, which may include a contingency fee of up to 40% of the amount claimed.

**G14. Class Action Waiver.** VF, each Merchant, and each Guarantor agree that they may bring claims against each other relating to this Agreement only in their individual capacities, and not as a plaintiff or class action member in any purported class or representative proceedings.

**G15. Arbitration.** VF, each Merchant, and each Guarantor hereby acknowledge, consent and agree that this Guaranty shall be subject to the same Arbitration provision contained in Section 48 of the Merchant Agreement, which provision is incorporate herein by reference as if fully restated.

**G16. Service of Process.** Each Merchant and each Guarantor consent to service of process and legal notices made by First Class or Priority Mail delivered by the United States Postal Service and addressed to the Contact Address set forth on the first page of the Agreement or any other address(es) provided in writing to VF by any Merchant or any Guarantor, and unless applicable law or rules provide otherwise, any such service will be deemed complete upon

| Name: | JASON MICHAEL ADELMAN | Title: | OWNER/AGENT/MANAGER | Date: | 11/08/2021 |
|---|---|---|---|---|---|

Page **15** of**18**

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

dispatch. Each Merchant and each Guarantor agrees that it will be precluded from asserting that it did not receive service of process or any other notice mailed to the Contact Address set forth on the first page of the Agreement if it does not furnish a certified mail return receipt signed by VF demonstrating that VF was provided with notice of a change in the Contact Address.

**G17. Severability.** If any provision of this Guarantee is deemed invalid or unenforceable as written, it will be construed, to the greatest extent possible, in a manner which will render it valid and enforceable, and any limitation on the scope or duration of any such provision necessary to make it valid and enforceable will be deemed to be part thereof. If any provision of this Guarantee is deemed void, all other provisions will remain in effect.

**G18. Survival.** The provisions of Sections G2, G3, G4, G5, G6, G7, G8, G9, G10, G11, G12, G13, G14, G15, G16, G17, G18, G19, G20, G21, and G22 shall survive any termination of this Guarantee.

**G19. Headings.** Headings of the various articles and/or sections of this Guarantee are for convenience only and do not necessarily define, limit, describe, or construe the contents of such articles or sections.

**G20. Attorney Review.** Each Guarantor acknowledges that it has had an opportunity to review this Guarantee, the Agreement, and all addenda with counsel of its choosing before signing the documents or has chosen not to availitself of the opportunity to do so.

**I have read and agree to the terms and conditions set forth above:**

| Name: JASON MICHAEL ADELMAN | Title: OWNER/AGENT/MANAGER | Date: 11/08/2021 |

FILED: SULLIVAN COUNTY CLERK 03/21/2022 01:09 PM
NYSCEF DOC. NO. 2

INDEX NO. E2022-439
RECEIVED NYSCEF: 03/21/2022

Case 7:22-cv-03376-NSR    Document 1-1    Filed 04/26/22    Page 26 of 54

Page 16 of 18

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

**G21. Entire Agreement.** This Guarantee, inclusive of all addenda, if any, executed simultaneously herewith may not be amended, modified, or canceled except in writing signed by all parties. Should there arise any conflict between this Guarantee and any other document preceding it, this Guarantee will govern. This Guarantee does not affect any previous agreement between the parties unless such an agreement is specifically referenced in the Agreement or herein. This Guarantee will not be affected by any subsequent agreement between the parties unless this Guarantee is specifically referenced therein.

**G22. Counterparts; Fax and Electronic Signatures.** This Guarantee may be executed electronically and in counterparts. Facsimile and electronic copies of this Guarantee will have the full force and effect of an original.

THE TERMS, DEFINITIONS, CONDITIONS AND INFORMATION SET FORTH IN THE "STANDARDMERCHANT CASH ADVANCE AGREEMENT", INCLUDING THE "TERMS AND CONDITIONS", ARE HEREBY INCORPORATED IN AND MADE A PART OF THIS GUARANTEE. CAPITALIZED TERMS NOT DEFINED IN THIS GUARANTEE SHALL HAVE THE MEANING SET FORTH IN THE STANDARD MERCHANT CASH ADVANCE AGREEMENT, INCLUDING THE TERMS AND CONDITIONS.

### EACH UNDERSIGNED HEREBY ACCEPTS THE TERMS OF THIS GUARANTEE

**GUARANTOR (#1)**

By: JASON MICHAEL ADELMAN
(Print Name)

_____
(Signature)

SS# ████████████

Driver License Number _____

**GUARANTOR (#2)**

By: _____
(Print Name)

_____
(Signature)

SS# _____

Driver License Number _____

Case 7:22-cv-03376-NSR    Document 1-1    Filed 04/26/22    Page 27 of 54

**STANDARD MERCHANT CASH ADVANCE AGREEMENT**

# BANK INFORMATION

Dear Merchant,

Thank you for accepting this offer from VERTEX FUNDING LLC. We look forward to being your funding partner.

You authorize VERTEX FUNDING LLC. to collect the Receivables Purchased Amount under this Agreement by ACH debiting your bank account with the bank listed below.

VERTEX FUNDING LLC. will require viewing access to your bank account each business day.

VERTEX FUNDING LLC. will also require viewing access to your bank account, prior to funding, as part of our underwriting process.

Please fill out the form below with the information necessary to access your account.

**\* Be sure to indicate capital or lower case letters.**

Name of bank: JP MORGAN CHASE BANK, N.A.

Name of account: HCF INSURANCE AGENCY    JASON MICHAEL ADELMAN

Account number: ████████    Routing number: ████████

Bank portal website: _____

Username: _____

Password: _____

1: Security                           Question/Answer
_____

2: Security                           Question/Answer
_____

3: Security                           Question/Answer
_____

Any other information necessary to access your account:
_____

**I have read and agree to the terms and conditions set forth above:**

_____

Name: JASON MICHAEL ADELMAN    Title: OWNER/AGENT/MANAGER    Date: 11/08/2021

## Referral Information

4 valid references are required to receive funding. References will be verified.

**Name:** Lowell Tatkin

**Relation:** Attorney

**Phone Number:** 310-721-5011

**Email Address:** Jadelman1977@gmail.com

**Name:** _____

**Relation:** _____

**Phone Number:** _____

**Email Address:** _____

**Name:** _____

**Relation:** _____

**Phone Number:** _____

**Email Address:** _____

**Name:** _____

**Relation:** _____

**Phone Number:** _____

**Email Address:** _____

## DECLARATION OF ORDINARY COURSE OF BUSINESS

Each undersigned hereby declares the following:

1.      I am duly authorized to sign the Standard Merchant Cash Advance Agreement ("Agreement"), dated 11/08/2021, between VERTEX FUNDING LLC. ("VF") and HCF INSURANCE AGENCY ("Merchant") on behalf of Merchant.

2.      This Declaration incorporates by reference the Agreement and every addendum to it.

3.      I acknowledge that I am authorized to sign the Agreement and every addendum to it on behalf of each Merchant.

4.      I acknowledge that I had sufficient time to review the Agreement and every addendum to it before signing it.

5.      I acknowledge that I had an opportunity to seek legal advice from counsel of my choosing before signing the Agreement and every addendum to it.

6.      I acknowledge that each Merchant is entering into the Agreement voluntarily and without any coercion.

7.      I acknowledge that each Merchant is entering into the Agreement in the ordinary course of its business.

8.      I acknowledge that the payments to be made from any Merchant to VF under the Agreement are being made in the ordinary course of each Merchant's business.

9.      I am aware of each Merchant's right to request a reconciliation of the payments made under the Agreement at any time.

10.     **I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.**

Executed on    11/08/2021
                    (Date)

**FOR THE MERCHANT/OWNER (#1)**

By: ___JASON MICHAEL ADELMAN___   ___OWNER/AGENT/MANAGER___   _____
            (Print Name)                    (Print Title)                    (Signature)

**FOR THE MERCHANT/OWNER (#2)**

By: _____   _____   _____
            (Print Name)                    (Print Title)                    (Signature)

# Signature Certificate

Document Ref.: NHGQN-CLZBD-KFXXA-HQ4WC

Document signed by:



## jason adelman

Verified E-mail:
jadelman1977@gmail.com



IP: 174.193.152.69    Date: 08 Nov 2021 20:49:11 UTC

Document completed by all parties on:
08 Nov 2021 20:49:11 UTC
Page 1 of 1



Signed with PandaDoc.com

PandaDoc is a document workflow and certified eSignature
solution trusted by 25,000+ companies worldwide.



| Amount | Date | Description | Deal ID | Merchant Name | Category |
|---|---|---|---|---|---|
| 10875 | 11/15/2021 | VERTEX FUNDING L HCF INSURA Nov 15 C | AA728170 | HCF INSURANCE AGENCY | Merchant Payment |
| 10875 | 11/16/2021 | VERTEX FUNDING L HCF INSURA Nov 16 C | AA728170 | HCF INSURANCE AGENCY | Merchant Payment |
| 10875 | 11/17/2021 | VERTEX FUNDING L HCF INSURA Nov 17 C | AA728170 | HCF INSURANCE AGENCY | Merchant Payment |
| 10875 | 11/18/2021 | VERTEX FUNDING L HCF INSURA Nov 18 C | AA728170 | HCF INSURANCE AGENCY | Merchant Payment |
| 10875 | 11/19/2021 | VERTEX FUNDING L HCF INSURA Nov 19 C | AA728170 | HCF INSURANCE AGENCY | Merchant Payment |
| 10875 | 11/22/2021 | VERTEX FUNDING L HCF INSURA Nov 22 C | AA728170 | HCF INSURANCE AGENCY | Merchant Payment |
| 10875 | 11/23/2021 | VERTEX FUNDING L HCF INSURA Nov 23 C | AA728170 | HCF INSURANCE AGENCY | Merchant Payment |
| 10875 | 11/24/2021 | VERTEX FUNDING L HCF INSURA Nov 24 C | AA728170 | HCF INSURANCE AGENCY | Merchant Payment |
| 10875 | 11/26/2021 | VERTEX FUNDING L HCF INSURA Nov 26 C | AA728170 | HCF INSURANCE AGENCY | Merchant Payment |
| 10875 | 11/29/2021 | VERTEX FUNDING L HCF INSURA Nov 29 C | AA728170 | HCF INSURANCE AGENCY | Merchant Payment |
| -10875 | 11/29/2021 | ACH RETURN | | AA728170 | HCF INSURANCE AGENCY | Bounce |
| 10875 | 11/30/2021 | VERTEX FUNDING L HCF INSURA Nov 30 C | AA728170 | HCF INSURANCE AGENCY | Merchant Payment |
| -10875 | 11/30/2021 | VERTEX FUNDING L HCF INSURA Nov 30 C | AA728170 | HCF INSURANCE AGENCY | Merchant Payment |
| 10875 | 11/30/2021 | WIRE FROM HCF INSURANCE AGENCY | | AA728170 | HCF INSURANCE AGENCY | Merchant Payment |
| 10875 | 12/1/2021 | VERTEX FUNDING L HCF INSURA Dec 1 CCD | AA728170 | HCF INSURANCE AGENCY | Merchant Payment |
| -10875 | 12/1/2021 | | | AA728170 | HCF INSURANCE AGENCY | Bounce |
| 10875 | 12/2/2021 | VERTEX FUNDING L HCF INSURA Dec 2 CCD | AA728170 | HCF INSURANCE AGENCY | Merchant Payment |
| 10875 | 12/3/2021 | VERTEX FUNDING L HCF INSURA Dec 3 CCD | AA728170 | HCF INSURANCE AGENCY | Merchant Payment |
| 10875 | 12/6/2021 | VERTEX FUNDING L HCF INSURA Dec 6 CCD | AA728170 | HCF INSURANCE AGENCY | Merchant Payment |
| 10875 | 12/7/2021 | VERTEX FUNDING L HCF INSURA Dec 7 CCD | AA728170 | HCF INSURANCE AGENCY | Merchant Payment |
| 10875 | 12/8/2021 | VERTEX FUNDING L HCF INSURA Dec 8 CCD | AA728170 | HCF INSURANCE AGENCY | Merchant Payment |
| 10875 | 12/9/2021 | VERTEX FUNDING L HCF INSURA Dec 9 CCD | AA728170 | HCF INSURANCE AGENCY | Merchant Payment |
| 10875 | 12/9/2021 | WIRE FROM HCF INSURANCE AGENCY | | AA728170 | HCF INSURANCE AGENCY | Merchant Payment |
| -10875 | 12/10/2021 | ACH RETURN DEC 8 | | AA728170 | HCF INSURANCE AGENCY | Bounce |
| 10875 | 12/10/2021 | VERTEX FUNDING L HCF INSURA Dec 10 C | AA728170 | HCF INSURANCE AGENCY | Merchant Payment |
| 10875 | 12/13/2021 | VERTEX FUNDING L HCF INSURA Dec 13 C | AA728170 | HCF INSURANCE AGENCY | Merchant Payment |
| 10000 | 12/13/2021 | WIRE FROM THE JASON MICHAEL EDWAR | AA728170 | HCF INSURANCE AGENCY | Merchant Payment |
| 10875 | 12/14/2021 | VERTEX FUNDING L HCF INSURA Dec 14 C | AA728170 | HCF INSURANCE AGENCY | Merchant Payment |
| -10875 | 12/14/2021 | | | AA728170 | HCF INSURANCE AGENCY | Bounce |
| 10875 | 12/15/2021 | VERTEX FUNDING L HCF INSURA Dec 15 C | AA728170 | HCF INSURANCE AGENCY | Merchant Payment |
| 10875 | 12/16/2021 | VERTEX FUNDING L HCF INSURA Dec 16 C | AA728170 | HCF INSURANCE AGENCY | Merchant Payment |
| 10875 | 12/17/2021 | VERTEX FUNDING L HCF INSURA Dec 17 C | AA728170 | HCF INSURANCE AGENCY | Merchant Payment |
| 10875 | 12/17/2021 | WIRE FROM HCF INSURANCE AGENCY | | AA728170 | HCF INSURANCE AGENCY | Merchant Payment |
| 10875 | 12/20/2021 | VERTEX FUNDING L HCF INSURA Dec 20 C | AA728170 | HCF INSURANCE AGENCY | Merchant Payment |
| -10875 | 12/20/2021 | | | AA728170 | HCF INSURANCE AGENCY | Bounce |
| 10875 | 12/21/2021 | VERTEX FUNDING L HCF INSURA Dec 21 C | AA728170 | HCF INSURANCE AGENCY | Merchant Payment |
| 10875 | 12/22/2021 | VERTEX FUNDING L HCF INSURA Dec 22 C | AA728170 | HCF INSURANCE AGENCY | Merchant Payment |
| 10875 | 12/23/2021 | VERTEX FUNDING L HCF INSURA Dec 23 C | AA728170 | HCF INSURANCE AGENCY | Merchant Payment |
| 10875 | 12/24/2021 | VERTEX FUNDING L HCF INSURA Dec 24 C | AA728170 | HCF INSURANCE AGENCY | Merchant Payment |
| -10875 | 12/24/2021 | | | AA728170 | HCF INSURANCE AGENCY | Bounce |
| 10875 | 12/27/2021 | VERTEX FUNDING L HCF INSURA Dec 27 C | AA728170 | HCF INSURANCE AGENCY | Merchant Payment |
| 10875 | 12/28/2021 | VERTEX FUNDING L HCF INSURA Dec 28 C | AA728170 | HCF INSURANCE AGENCY | Merchant Payment |
| 10875 | 12/29/2021 | VERTEX FUNDING L HCF INSURA Dec 29 C | AA728170 | HCF INSURANCE AGENCY | Merchant Payment |
| 10875 | 12/30/2021 | VERTEX FUNDING L HCF INSURA Dec 30 C | AA728170 | HCF INSURANCE AGENCY | Merchant Payment |
| -10875 | 12/30/2021 | | | AA728170 | HCF INSURANCE AGENCY | Bounce |
| 10875 | 12/31/2021 | VERTEX FUNDING L HCF INSURA Dec 31 C | AA728170 | HCF INSURANCE AGENCY | Merchant Payment |
| -10875 | 12/31/2021 | | | AA728170 | HCF INSURANCE AGENCY | Bounce |
| 32625 | 1/3/2022 | VERTEX FUNDING L HCF INSURA Jan 03 C | AA728170 | HCF INSURANCE AGENCY | Merchant Payment |
| 10875 | 1/3/2022 | VERTEX FUNDING L HCF INSURA Jan 4 CCD | AA728170 | HCF INSURANCE AGENCY | Merchant Payment |
| 10875 | 1/4/2022 | VERTEX FUNDING L HCF INSURA Jan 4 CCD | AA728170 | HCF INSURANCE AGENCY | Merchant Payment |
| 10875 | 1/5/2022 | VERTEX FUNDING L HCF INSURA Jan 5 CCD | AA728170 | HCF INSURANCE AGENCY | Merchant Payment |
| -32625 | 1/5/2022 | | | AA728170 | HCF INSURANCE AGENCY | Bounce |
| -10875 | 1/5/2022 | | | AA728170 | HCF INSURANCE AGENCY | Bounce |
| 10875 | 1/6/2022 | VERTEX FUNDING L HCF INSURA Jan 6 CCD | AA728170 | HCF INSURANCE AGENCY | Merchant Payment |
| 10875 | 1/7/2022 | VERTEX FUNDING L HCF INSURA Jan 7 CCD | AA728170 | HCF INSURANCE AGENCY | Merchant Payment |
| 10875 | 1/10/2022 | VERTEX FUNDING L HCF INSURA Jan 10 C | AA728170 | HCF INSURANCE AGENCY | Merchant Payment |
| 10875 | 1/11/2022 | VERTEX FUNDING L HCF INSURA Jan 11 C | AA728170 | HCF INSURANCE AGENCY | Merchant Payment |
| 10875 | 1/12/2022 | VERTEX FUNDING L HCF INSURA Jan 12 C | AA728170 | HCF INSURANCE AGENCY | Merchant Payment |
| 10875 | 1/13/2022 | VERTEX FUNDING L HCF INSURA Jan 13 C | AA728170 | HCF INSURANCE AGENCY | Merchant Payment |
| 10875 | 1/14/2022 | VERTEX FUNDING L HCF INSURA Jan 14 C | AA728170 | HCF INSURANCE AGENCY | Merchant Payment |
| 10875 | 1/18/2022 | VERTEX FUNDING L HCF INSURA Jan 18 C | AA728170 | HCF INSURANCE AGENCY | Merchant Payment |
| 10875 | 1/19/2022 | VERTEX FUNDING L HCF INSURA Jan 19 C | AA728170 | HCF INSURANCE AGENCY | Merchant Payment |
| 10875 | 1/20/2022 | VERTEX FUNDING L HCF INSURA Jan 20 C | AA728170 | HCF INSURANCE AGENCY | Merchant Payment |
| -10875 | 1/20/2022 | | | AA728170 | HCF INSURANCE AGENCY | Bounce |
| 10875 | 1/21/2022 | VERTEX FUNDING L HCF INSURA Jan 21 C | AA728170 | HCF INSURANCE AGENCY | Merchant Payment |
| -10875 | 1/21/2022 | | | AA728170 | HCF INSURANCE AGENCY | Bounce |
| 10875 | 1/24/2022 | VERTEX FUNDING L HCF INSURA Jan 24 C | AA728170 | HCF INSURANCE AGENCY | Merchant Payment |
| -10875 | 1/24/2022 | | | AA728170 | HCF INSURANCE AGENCY | Bounce |
| 10875 | 1/25/2022 | VERTEX FUNDING L HCF INSURA Jan 25 C | AA728170 | HCF INSURANCE AGENCY | Merchant Payment |
| -10875 | 1/25/2022 | | | AA728170 | HCF INSURANCE AGENCY | Bounce |
| 10875 | 1/26/2022 | VERTEX FUNDING L HCF INSURA Jan 26 C | AA728170 | HCF INSURANCE AGENCY | Merchant Payment |
| 10875 | 1/27/2022 | VERTEX FUNDING L HCF INSURA Jan 27 C | AA728170 | HCF INSURANCE AGENCY | Merchant Payment |
| -10875 | 1/27/2022 | | | AA728170 | HCF INSURANCE AGENCY | Bounce |
| 10875 | 1/28/2022 | VERTEX FUNDING L HCF INSURA Jan 28 C | AA728170 | HCF INSURANCE AGENCY | Merchant Payment |
| 10875 | 1/31/2022 | VERTEX FUNDING L HCF INSURA Jan 31 C | AA728170 | HCF INSURANCE AGENCY | Merchant Payment |
| -10875 | 1/31/2022 | | | AA728170 | HCF INSURANCE AGENCY | Bounce |
| 10875 | 2/1/2022 | VERTEX FUNDING L HCF INSURA Feb 1 CCD | AA728170 | HCF INSURANCE AGENCY | Merchant Payment |
| -10875 | 2/1/2022 | | | AA728170 | HCF INSURANCE AGENCY | Bounce |
| 10875 | 2/2/2022 | VERTEX FUNDING L HCF INSURA Feb 2 CCD | AA728170 | HCF INSURANCE AGENCY | Merchant Payment |
| -10875 | 2/2/2022 | | | AA728170 | HCF INSURANCE AGENCY | Bounce |
| 10875 | 2/3/2022 | VERTEX FUNDING L HCF INSURA Feb 3 CCD | AA728170 | HCF INSURANCE AGENCY | Merchant Payment |
| -10875 | 2/3/2022 | | | AA728170 | HCF INSURANCE AGENCY | Bounce |
| 10875 | 2/4/2022 | VERTEX FUNDING L HCF INSURA Feb 4 CCD | AA728170 | HCF INSURANCE AGENCY | Merchant Payment |
| -10875 | 2/4/2022 | | | AA728170 | HCF INSURANCE AGENCY | Bounce |
| 10875 | 2/7/2022 | VERTEX FUNDING L HCF INSURA Feb 7 CCD | AA728170 | HCF INSURANCE AGENCY | Merchant Payment |
| 10875 | 2/8/2022 | VERTEX FUNDING L HCF INSURA Feb 8 CCD | AA728170 | HCF INSURANCE AGENCY | Merchant Payment |
| 10875 | 2/9/2022 | VERTEX FUNDING L HCF INSURA Feb 9 CCD | AA728170 | HCF INSURANCE AGENCY | Merchant Payment |
| -10875 | 2/9/2022 | | | AA728170 | HCF INSURANCE AGENCY | Bounce |
| 10875 | 2/10/2022 | VERTEX FUNDING L HCF INSURA Feb 10 | AA728170 | HCF INSURANCE AGENCY | Merchant Payment |
| -10875 | 2/10/2022 | | | AA728170 | HCF INSURANCE AGENCY | Bounce |
| 10875 | 2/11/2022 | VERTEX FUNDING L HCF INSURA Feb 11 C | AA728170 | HCF INSURANCE AGENCY | Merchant Payment |
| 10875 | 2/11/2022 | | | AA728170 | HCF INSURANCE AGENCY | Bounce |
| 10875 | 2/14/2022 | VERTEX FUNDING L HCF INSURA Feb 14 C | AA728170 | HCF INSURANCE AGENCY | Merchant Payment |
| -10875 | 2/14/2022 | | | AA728170 | HCF INSURANCE AGENCY | Bounce |
| 10875 | 2/15/2022 | VERTEX FUNDING L HCF INSURA Feb 15 C | AA728170 | HCF INSURANCE AGENCY | Merchant Payment |
| -10875 | 2/15/2022 | | | AA728170 | HCF INSURANCE AGENCY | Bounce |
| 10875 | 2/16/2022 | VERTEX FUNDING L HCF INSURA Feb 16 C | AA728170 | HCF INSURANCE AGENCY | Merchant Payment |
| 10875 | 2/17/2022 | VERTEX FUNDING L HCF INSURA Feb 17 C | AA728170 | HCF INSURANCE AGENCY | Merchant Payment |
| -10875 | 2/17/2022 | | | AA728170 | HCF INSURANCE AGENCY | Bounce |
| 10875 | 2/18/2022 | VERTEX FUNDING L HCF INSURA Feb 18 C | AA728170 | HCF INSURANCE AGENCY | Merchant Payment |
| -10875 | 2/18/2022 | | | AA728170 | HCF INSURANCE AGENCY | Bounce |
| 10875 | 2/22/2022 | VERTEX FUNDING L HCF INSURA Feb 22 C | AA728170 | HCF INSURANCE AGENCY | Merchant Payment |
| -10875 | 2/22/2022 | | | AA728170 | HCF INSURANCE AGENCY | Bounce |
| 10875 | 2/23/2022 | VERTEX FUNDING L HCF INSURA Feb 23 C | AA728170 | HCF INSURANCE AGENCY | Merchant Payment |
| -10875 | 2/23/2022 | | | AA728170 | HCF INSURANCE AGENCY | Bounce |
| 10875 | 2/24/2022 | VERTEX FUNDING L HCF INSURA Feb 24 C | AA728170 | HCF INSURANCE AGENCY | Merchant Payment |
| 10875 | 2/25/2022 | VERTEX FUNDING L HCF INSURA Feb 25 C | AA728170 | HCF INSURANCE AGENCY | Merchant Payment |
| -10875 | 2/25/2022 | | | AA728170 | HCF INSURANCE AGENCY | Bounce |
| 10875 | 2/28/2022 | VERTEX FUNDING L HCF INSURA Feb 28 C | AA728170 | HCF INSURANCE AGENCY | Merchant Payment |
| 10875 | 3/1/2022 | VERTEX FUNDING L HCF INSURA Mar 1 CCD | AA728170 | HCF INSURANCE AGENCY | Merchant Payment |
| 10875 | 3/1/2022 | | | AA728170 | HCF INSURANCE AGENCY | Bounce |
| 10875 | 3/2/2022 | VERTEX FUNDING L HCF INSURA Mar 2 CCD | AA728170 | HCF INSURANCE AGENCY | Merchant Payment |
| -10875 | 3/2/2022 | | | AA728170 | HCF INSURANCE AGENCY | Bounce |
| 10875 | 3/3/2022 | VERTEX FUNDING L HCF INSURA Mar 3 CCD | AA728170 | HCF INSURANCE AGENCY | Merchant Payment |
| -10875 | 3/3/2022 | | | AA728170 | HCF INSURANCE AGENCY | Bounce |
| -10875 | 3/4/2022 | | | AA728170 | HCF INSURANCE AGENCY | Bounce |
| -10875 | 3/7/2022 | | | AA728170 | HCF INSURANCE AGENCY | Bounce |

| | |
|---|---|
| Date Funded | 11/12/2021 |
| Paid | 912625 |
| Bounced | -467625 |
| Total Paid Back | 445000 |
| Payback | 870000 |
| Outstanding | 425,000 |
| Owe | 403250 |

| Date | Fund | Daily | Chargeback | suppose to pay |
|---|---|---|---|---|
| | | 912625 | -467625 | 848250 |
| Sunday, November 7, 2021 | | 0 | 0 | |
| Monday, November 8, 2021 | | 0 | 0 | |
| Tuesday, November 9, 2021 | | 0 | 0 | |
| Wednesday, November 10, 2021 | | 0 | 0 | |
| Thursday, November 11, 2021 | | 0 | 0 | |
| Friday, November 12, 2021 | 570000 | 0 | 0 | |
| Saturday, November 13, 2021 | | 0 | 0 | |
| Sunday, November 14, 2021 | | 0 | 0 | |
| Monday, November 15, 2021 | | 10875 | 0 | 10875 |
| Tuesday, November 16, 2021 | | 10875 | 0 | 10875 |
| Wednesday, November 17, 2021 | | 10875 | 0 | 10875 |
| Thursday, November 18, 2021 | | 10875 | 0 | 10875 |
| Friday, November 19, 2021 | | 10875 | 0 | 10875 |
| Saturday, November 20, 2021 | | 0 | 0 | |
| Sunday, November 21, 2021 | | 0 | 0 | |
| Monday, November 22, 2021 | | 10875 | 0 | 10875 |
| Tuesday, November 23, 2021 | | 10875 | 0 | 10875 |
| Wednesday, November 24, 2021 | | 10875 | 0 | 10875 |
| Thursday, November 25, 2021 | | 0 | 0 | |
| Friday, November 26, 2021 | | 10875 | 0 | 10875 |
| Saturday, November 27, 2021 | | 0 | 0 | |
| Sunday, November 28, 2021 | | 0 | 0 | |
| Monday, November 29, 2021 | | 10875 | -10875 | 10875 |
| Tuesday, November 30, 2021 | | 32625 | 0 | 10875 |
| Wednesday, December 1, 2021 | | 10875 | -10875 | 10875 |
| Thursday, December 2, 2021 | | 10875 | 0 | 10875 |
| Friday, December 3, 2021 | | 10875 | 0 | 10875 |
| Saturday, December 4, 2021 | | 0 | 0 | |
| Sunday, December 5, 2021 | | 0 | 0 | |
| Monday, December 6, 2021 | | 10875 | 0 | 10875 |
| Tuesday, December 7, 2021 | | 10875 | 0 | 10875 |
| Wednesday, December 8, 2021 | | 10875 | 0 | 10875 |
| Thursday, December 9, 2021 | | 21750 | 0 | 10875 |
| Friday, December 10, 2021 | | 10875 | -10875 | 10875 |
| Saturday, December 11, 2021 | | 0 | 0 | 0 |
| Sunday, December 12, 2021 | | 0 | 0 | 0 |
| Monday, December 13, 2021 | | 20875 | 0 | 10875 |
| Tuesday, December 14, 2021 | | 10875 | -10875 | 10875 |
| Wednesday, December 15, 2021 | | 10875 | 0 | 10875 |
| Thursday, December 16, 2021 | | 10875 | 0 | 10875 |
| Friday, December 17, 2021 | | 21750 | 0 | 10875 |
| Saturday, December 18, 2021 | | 0 | 0 | 0 |
| Sunday, December 19, 2021 | | 0 | 0 | 0 |
| Monday, December 20, 2021 | | 10875 | -10875 | 10875 |
| Tuesday, December 21, 2021 | | 10875 | 0 | 10875 |
| Wednesday, December 22, 2021 | | 10875 | 0 | 10875 |
| Thursday, December 23, 2021 | | 10875 | 0 | 10875 |
| Friday, December 24, 2021 | | 10875 | -10875 | 10875 |
| Saturday, December 25, 2021 | | 0 | 0 | 0 |
| Sunday, December 26, 2021 | | 0 | 0 | 0 |
| Monday, December 27, 2021 | | 10875 | 0 | 10875 |
| Tuesday, December 28, 2021 | | 10875 | 0 | 10875 |
| Wednesday, December 29, 2021 | | 10875 | 0 | 10875 |
| Thursday, December 30, 2021 | | 10875 | -10875 | 10875 |
| Friday, December 31, 2021 | | 10875 | -10875 | 10875 |
| Saturday, January 1, 2022 | | 0 | 0 | 0 |
| Sunday, January 2, 2022 | | 0 | 0 | 0 |
| Monday, January 3, 2022 | | 43500 | 0 | 10875 |
| Tuesday, January 4, 2022 | | 10875 | 0 | 10875 |
| Wednesday, January 5, 2022 | | 10875 | -43500 | 10875 |
| Thursday, January 6, 2022 | | 10875 | 0 | 10875 |
| Friday, January 7, 2022 | | 10875 | 0 | 10875 |
| Saturday, January 8, 2022 | | 0 | 0 | 0 |
| Sunday, January 9, 2022 | | 0 | 0 | 0 |
| Monday, January 10, 2022 | | 10875 | 0 | 10875 |
| Tuesday, January 11, 2022 | | 10875 | 0 | 10875 |
| Wednesday, January 12, 2022 | | 10875 | 0 | 10875 |
| Thursday, January 13, 2022 | | 10875 | 0 | 10875 |
| Friday, January 14, 2022 | | 10875 | 0 | 10875 |
| Saturday, January 15, 2022 | | 0 | 0 | 0 |
| Sunday, January 16, 2022 | | 0 | 0 | 0 |
| Monday, January 17, 2022 | | 0 | 0 | 0 |
| Tuesday, January 18, 2022 | | 10875 | 0 | 10875 |
| Wednesday, January 19, 2022 | | 10875 | 0 | 10875 |
| Thursday, January 20, 2022 | | 10875 | -10875 | 10875 |
| Friday, January 21, 2022 | | 10875 | -10875 | 10875 |
| Saturday, January 22, 2022 | | 0 | 0 | 0 |
| Sunday, January 23, 2022 | | 0 | 0 | 0 |
| Monday, January 24, 2022 | | 10875 | -10875 | 10875 |
| Tuesday, January 25, 2022 | | 10875 | -10875 | 10875 |
| Wednesday, January 26, 2022 | | 10875 | 0 | 10875 |
| Thursday, January 27, 2022 | | 10875 | -10875 | 10875 |
| Friday, January 28, 2022 | | 10875 | 0 | 10875 |
| Saturday, January 29, 2022 | | 0 | 0 | 0 |
| Sunday, January 30, 2022 | | 0 | 0 | 0 |
| Monday, January 31, 2022 | | 10875 | -10875 | 10875 |
| Tuesday, February 1, 2022 | | 10875 | -10875 | 10875 |
| Wednesday, February 2, 2022 | | 10875 | -10875 | 10875 |
| Thursday, February 3, 2022 | | 10875 | -10875 | 10875 |
| Friday, February 4, 2022 | | 10875 | -10875 | 10875 |
| Saturday, February 5, 2022 | | 0 | 0 | 0 |
| Sunday, February 6, 2022 | | 0 | 0 | 0 |
| Monday, February 7, 2022 | | 10875 | 0 | 10875 |
| Tuesday, February 8, 2022 | | 10875 | 0 | 10875 |
| Wednesday, February 9, 2022 | | 10875 | -10875 | 10875 |
| Thursday, February 10, 2022 | | 10875 | -10875 | 10875 |
| Friday, February 11, 2022 | | 10875 | -10875 | 10875 |
| Saturday, February 12, 2022 | | 0 | 0 | 0 |
| Sunday, February 13, 2022 | | 0 | 0 | 0 |
| Monday, February 14, 2022 | | 10875 | -10875 | 10875 |
| Tuesday, February 15, 2022 | | 10875 | -10875 | 10875 |
| Wednesday, February 16, 2022 | | 10875 | 0 | 10875 |
| Thursday, February 17, 2022 | | 10875 | -10875 | 10875 |
| Friday, February 18, 2022 | | 10875 | -10875 | 10875 |
| Saturday, February 19, 2022 | | 0 | 0 | 0 |
| Sunday, February 20, 2022 | | 0 | 0 | 0 |
| Monday, February 21, 2022 | | 0 | 0 | 0 |
| Tuesday, February 22, 2022 | | 10875 | -10875 | 10875 |
| Wednesday, February 23, 2022 | | 10875 | -10875 | 10875 |
| Thursday, February 24, 2022 | | 10875 | 0 | 10875 |
| Friday, February 25, 2022 | | 10875 | -10875 | 10875 |
| Saturday, February 26, 2022 | | 0 | 0 | 0 |
| Sunday, February 27, 2022 | | 0 | 0 | 0 |
| Monday, February 28, 2022 | | 10875 | 0 | 10875 |
| Tuesday, March 1, 2022 | | 10875 | 0 | 10875 |
| Wednesday, March 2, 2022 | | 10875 | -10875 | 10875 |
| Thursday, March 3, 2022 | | 10875 | -10875 | 10875 |
| Friday, March 4, 2022 | | 0 | -10875 | 10875 |
| Saturday, March 5, 2022 | | 0 | 0 | |
| Sunday, March 6, 2022 | | 0 | 0 | |
| Monday, March 7, 2022 | | 0 | -10875 | 10875 |

DocuSign Envelope ID: 9D694C5C-28C9-4F85-9C6F-3C9FE6EBA91A
Case 7:22-cv-03376-NSR    Document 1-1    Filed 04/26/22    Page 32 of 54

Page **1** of 18

# VERTEX FUNDING LLC

**99 Wall St New York, NY 10005 suite No. 1937**

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

This is an Agreement dated ___12/17/2021_____ by and between VERTEX FUNDING LLC ("VF") and each merchant listed below ("Merchant").

Merchant's Legal Name: _HCF INSURANCE AGENCY_____

D/B/A: _HCF INSURANCE AGENCY_____ Fed ID #: ▮▮▮▮▮▮▮

Type of Entity:

___ Corporation  ___ Limited Liability Company  ___ Limited Partnership  ___ Limited Liability Partnership  ___ Sole Proprietor

Business Address: _21747 ERWIN ST, 2ND FLOOR_____ City: _WOODLAND HILLS_ State: _CA___ Zip: _91367_

Contact Address: _19 HITCHING POST LANE_____ City: _BELL CANYON___ State: _CA___ Zip: _91307_

E-mail Address:_____ Phone Number: _____

| | |
|---|---|
| **Purchase Price**<br>*This is the amount being paid to Merchant(s) for the Receivables Purchased Amount (defined below).* | $ 500,000.00 |
| **Receivables Purchased Amount**<br>*This is the amount of Receivables (defined in Section 1 below) being sold.* | $ 725,500.00 |
| **Specified Percentage**<br>*This is the percentage of Receivables (defined below) to be delivered until the Receivables Purchased Amount is paid in full.* | 16 % |
| **Net Funds Provided**<br>*This is the net amount being paid to or on behalf of Merchant(s) after deduction of applicable fees listed in Section 2 below.* | $ 500,000.00 |
| **Initial Estimated Payment**<br>*This is only applicable if an Addendum for Estimated Payments is being signed. This is the initial amount of periodic payments collected from Merchant(s) as an approximation of no more than the Specified Percentage of the Receivables and is subject to reconciliation as set forth in Section 4 below.* | $ 6,041.67<br>**per** day |

## TERMS AND CONDITIONS

**1. Sale of Future Receipts.** Merchant(s) hereby sell, assign, and transfer to VF (making VF the absolute owner) in consideration of the funds provided ("Purchase Price") specified above, all of each Merchant's future accounts, contract rights, and other obligations arising from or relating to the payment of monies from each Merchant's customers and/or other third party payors (the "Receivables", defined as all payments made by cash, check, credit or debit card, electronic transfer, or other form of monetary payment in the ordinary course of each merchant's business), for the payment of each Merchant's sale of goods or services until the amount specified above (the "Receivables Purchased

DocuSigned by:

224E17EA1D81486...

Name: _JASON MICHAEL ADELMAN_ Title: _OWNER/AGENT/MANAGER_ Date: _12/17/2021_

Case 7:22-cv-03376-NSR   Document 1-1   Filed 04/26/22   Page 33 of 54

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

Amount") has been delivered by Merchant(s) to VF. Each Merchant hereby acknowledges that until the Receivables Purchased Amount has been received in full by VF, each Merchant's Receivables, up to the balance of the Receivables Purchased Amount, are the property of VF and not the property of any Merchant. Each Merchant agrees that it is a fiduciary for VF and that each Merchant will hold Receivables in trust for VF in its capacity as a fiduciary for VF.

The Receivables Purchased Amount shall be paid to VF by each Merchant irrevocably authorizing only one depositing account acceptable to VF (the "Account") to remit the percentage specified above (the "Specified Percentage") of each Merchant's settlement amounts due from each transaction, until such time as VF receivespayment in full of the Receivables Purchased Amount. Each Merchant hereby authorizes VF to ACH debit the specified remittances from the Account on a daily basis as of the next business day after the date of this Agreement and willprovide VF with all required access codes and monthly bank statements. Each Merchant understands that it will be held responsible for any fees resulting from a rejected ACH attempt or an Event of Default (see Section 2). VF is not responsible for any overdrafts or rejected transactions that may result from VF's ACH debiting the Specified Percentage amounts under the terms of this Agreement.

**2. Additional Fees.** In addition to the Receivables Purchased Amount, each Merchant will be held responsible to VF for the following fees, where applicable:

A. $ 0.00     to cover underwriting and the ACH debit program, as well as related expenses. This will be deducted from payment of the Purchase Price.

B. Wire Fee - Merchant(s) shall receive funding electronically to the Account and will be charged $50.00 for a Fed Wire or $0.00 for a bank ACH. This will be deducted from payment of the Purchase Price.

C. Blocked Account/Default - $ 250,000.00  If VF considers an Event of Default to have taken place under Section 34.

D. UCC Fee - $195.00 – to cover VF filing a UCC-1 financing statement to secure its interest in the Receivables Purchased Amount. A $195.00 UCC termination fee will be charged if a UCC filing is terminated.

E. Court costs, arbitration fees, collection agency fees, attorney fees, expert fees, and any other expenses incurred in litigation, arbitration, or the enforcement of any of VF's legal or contractual rights against each Merchant and/or each Guarantor, if required, as explained in other Sections of this Agreement.

**3. Cap on Collection of the Receivables Purchased Amount.** The amount that VF will collect from Merchant(s) towards the Receivables Purchased Amount during any specific day will be capped at $ 6,041.67     (the "Cap"). If the Specified Percentage of all Receivables for a specific day is less than the Cap, then in addition to the Specified Percentage of Receivables for that day, VF will be permitted to collect any Receivables it did not previously collect due to the Cap such that the total amount collected during that day does not exceed theCap. The Cap is not applicable to make up for a business day on which VF is closed and does not ACH debit the Account, to subsequent attempts to collect a rejected or blocked ACH payment, or for the collection of any of the feeslisted in Section 2 or if any Event of Default listed in Section 34 is considered by VF to have taken place.

**4. Reconciliations**. Any Merchant may give written notice to VF requesting that VF conduct a reconciliation in order to ensure that the amount that VF has collected equals the Specified Percentage of Merchant(s)'s Receivables under this Agreement. Any Merchant may give written notice requesting a reconciliation. A reconciliation may also be requested by e-mail to reconciliations@vertexfundinggroup.com and such notice will be deemed to have been received if and when VF sends a reply e-mail (but not a read receipt). If such reconciliation determines that VF collected more than it was entitled to, then VF will credit to the Account all amounts to which VF was not entitled within sevendays thereafter. If such reconciliation determines that VF collected less than it was entitled to, then VF will debit from the Account all additional amounts to which VF was entitled within seven days thereafter. In order to effectuate this reconciliation, any Merchant must produce with its request the login and password for the Account and any and all bank statements and merchant statements covering the period from the date of this Agreement through the date of the request for a reconciliation. VF will complete each such reconciliation within two business days after receipt of a written request for one accompanied by the information and documents required for it. Nothing herein limits the amount of times that such a reconciliation may be requested.

**5. Prepayments.** Although there is no obligation to do so, any Merchant may prepay any amount towards the

**I have read and agree to the terms and conditions set forth above:**

DocuSigned by:

_____
224E17EA1D81486...

Name: __JASON MICHAEL ADELMAN__ Title:OWNER/AGENT/MANAGER     Date: 12/17/2021

FILED: SULLIVAN COUNTY CLERK 03/21/2022 01:09 PM
NYSCEF DOC. NO. 4

INDEX NO. E2022-439

RECEIVED NYSCEF: 03/21/2022

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

Receivables Purchased Amount. There will be no penalty for any prepayment made by any Merchant. Any Merchant may elect to terminate this Agreement by prepaying VF the amount of the balance of the Receivables Purchased Amount at that time.

**6. Merchant Deposit Agreement.** Merchant(s) shall appoint a bank acceptable to VF, to obtain electronic fund transfer services and/or "ACH" payments. Merchant(s) shall provide VF and/or its authorized agent with all of the information, authorizations, and passwords necessary to verify each Merchant's Receivables. Merchant(s) shall authorize VF and/or its agent(s) to deduct the amounts owed to VF for the Receivables as specified herein from settlement amounts which would otherwise be due to each Merchant and to pay such amounts to VF by permitting VF to withdraw the Specified Percentage by ACH debiting of the account. The authorization shall be irrevocable absent VF's written consent.

**7. Term of Agreement.** The term of this Agreement is indefinite and shall continue until VF receives the full Receivables Purchased Amount, or earlier if terminated pursuant to any provision of this Agreement. The provisions of Sections 4, 6, 7, 8, 10, 11, 13, 14, 15, 17, 18, 19, 22, 23, 28, 31, 32, 33, 34, 35, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, and 58 shall survive any termination of this Agreement.

**8. Ordinary Course of Business.** Each Merchant acknowledges that it is entering into this Agreement in the ordinary course of its business and that the payments to be made from each Merchant to VF under this Agreement are being made in the ordinary course of each Merchant's business.

**9. Financial Condition.** Each Merchant and each Guarantor (Guarantor being defined as each signatory to the Guarantee of this Agreement) authorizes VF and its agent(s) to investigate each Merchant's financial responsibility and history, and will provide to VF any bank or financial statements, tax returns, and other documents and records, as VF deems necessary prior to or at any time after execution of this Agreement. A photocopy of this authorization will be deemed as acceptable for release of financial information. VF is authorized to update such information and financial profiles from time to time as it deems appropriate.

**10. Monitoring, Recording, and Electronic Communications.** VF may choose to monitor and/or record telephone calls with any Merchant and its owners, employees, and agents. By signing this Agreement, each Merchant agrees that any call between VF and any Merchant or its representatives may be monitored and/or recorded. Each Merchant and each Guarantor grants access for VF to enter any Merchant's premises and to observe any Merchant's premises without any prior notice to any Merchant at any time after execution of this Agreement.

VF may use automated telephone dialing, text messaging systems, and e-mail to provide messages to Merchant(s), Owner(s) (Owner being defined as each person who signs this Agreement on behalf of a Merchant), and Guarantor(s) about Merchant(s)'s account. Telephone messages may be played by a machine automatically when the telephone is answered, whether answered by an Owner, a Guarantor, or someone else. These messages may also be recorded by the recipient's answering machine or voice mail. Each Merchant, each Owner, and each Guarantor gives VF permission to call or send a text message to any telephone number given to VF in connection with this Agreement and to play pre-recorded messages and/or send text messages with information about this Agreement and/or any Merchant's account over the phone. Each Merchant, each Owner, and each Guarantor also gives VF permission to communicate such information to them by e-mail. Each Merchant, each Owner, and each Guarantor agree that VF will not be liable to any of them for any such calls or electronic communications, even if information is communicated to an unintended recipient. Each Merchant, each Owner, and each Guarantor acknowledge that when they receive such calls or electronic communications, they may incur a charge from the company that provides them with telecommunications, wireless, and/or Internet services, and that VF has no liability for any such charges.

**11. Accuracy of Information Furnished by Merchant and Investigation Thereof.** To the extent set forth herein, each of the parties is obligated upon his, her, or its execution of the Agreement to all terms of the Agreement. Each Merchant and each Owner signing this Agreement represent that he or she is authorized to sign this Agreement for each Merchant, legally binding said Merchant to its obligations under this Agreement and that the information provided herein and in all of VF's documents, forms, and recorded interview(s) is true, accurate, and complete in all respects. YI

**I have read and agree to the terms and conditions set forth above:**

DocuSigned by:

_____
224E17EA1D81486...

Name: JASON MICHAEL ADELMAN   Title: OWNER/AGENT/MANAGER   Date: 12/17/2021

FILED: SULLIVAN COUNTY CLERK 03/21/2022 01:09 PM
NYSCEF DOC. NO. 4

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

26 may produce a monthly statement reflecting the delivery of the Specified Percentage of Receivables from Merchant(s) to VF. An investigative report may be made in connection with the Agreement. Each Merchant and each Owner signing this Agreement authorize VF, its agents and representatives, and any credit-reporting agency engaged by VF, to (i) investigate any references given or any other statements obtained from or about each Merchant or any of its Owners for the purpose of this Agreement, and (ii) pull credit report at any time now or for so long as any Merchant and/or Owners(s) continue to have any obligation to VF under this Agreement or for VF's ability to determine any Merchant's eligibility to enter into any future agreement with VF. Any misrepresentation made by any Merchant or Owner in connection with this Agreement may constitute a separate claim for fraud or intentional misrepresentation.

*Authorization for soft pulls:* Each Merchant and each Owner understands that by signing this Agreement, they are providing 'written instructions' to VF under the Fair Credit Reporting Act, authorizing VF to obtain information from their personal credit profile or other information from Experian, TransUnion, and Equifax. Each Merchant and each Guarantor authorizes VF to obtain such information solely to conduct a pre-qualification for credit.

*Authorization for hard pulls:* Each Merchant and each Owner understands that by signing this Agreement, they are providing 'written instructions' to VF under the Fair Credit Reporting Act, authorizing VF to obtain information from their personal credit profile or other information from Experian, TransUnion, and Equifax. Each Merchant and each Guarantor authorizes VF to obtain such information in accordance with a merchant cash advance application.

**12. Transactional History.** Each Merchant authorizes its bank to provide VF with its banking and/or credit card processing history.

**13. Indemnification.** Each Merchant and each Guarantor jointly and severally indemnify and hold harmless each Merchant's credit card and check processors (collectively, "Processor") and Processor's officers, directors, and shareholders against all losses, damages, claims, liabilities, and expenses (including reasonable attorney and expert fees) incurred by Processor resulting from (a) claims asserted by VF for monies owed to VF from any Merchant and (b) actions taken by any Processor in reliance upon information or instructions provided by VF.

**14. No Liability.** In no event will VF be liable for any claims asserted by any Merchant under any legal theory for lost profits, lost revenues, lost business opportunities, exemplary, punitive, special, incidental, indirect, or consequential damages, each of which is waived by each Merchant and each Guarantor.

**15. Sale of Receivables.** Each Merchant and VF agree that the Purchase Price under this Agreement is in exchange for the Receivables Purchased Amount and that such Purchase Price is not intended to be, nor shall it be construed as a loan from VF to any Merchant. VF is entering into this Agreement knowing the risks that each Merchant's business may decline or fail, resulting in VF not receiving the Receivables Purchased Amount. EachMerchant agrees that the Purchase Price in exchange for the Receivables pursuant to this Agreement equals the fair market value of such Receivables. VF has purchased and shall own all the Receivables described in this Agreement up to the full Receivables Purchased Amount as the Receivables are created. Payments made to VF in respect to the full amount of the Receivables shall be conditioned upon each Merchant's sale of products and services and the payment therefor by each Merchant's customers in the manner provided in this Agreement. Although certain jurisdictions requirethe disclosure of an Annual Percentage Rate or APR in connection with this Agreement, those disclosures do not change the fact that the transaction encompassed by this Agreement is not a loan and does not have an interest rate.

**16. Power of Attorney.** Each Merchant irrevocably appoints VF as its agent and attorney-in-fact with full authority to take any action or execute any instrument or document to settle all obligations due to VF, or, if VF considers an Event of Default to have taken place under Section 34, to settle all obligations due to VF from each Merchant, including without limitation (i) to obtain and adjust insurance; (ii) to collect monies due or to become due under or in respect of any of the Collateral (which is defined in Section 33); (iii) to receive, endorse and collect any checks, notes, drafts, instruments, documents, or chattel paper in connection with clause (i) or clause (ii) above; (iv) to sign each Merchant's name on any invoice, bill of lading, or assignment directing customers or account debtors to make payment directly to VF; and (v) to file any claims or take any action or institute any proceeding which VF may deem necessary for the collection of any of the unpaid Receivables Purchased Amount from the Collateral, or otherwise to enforce its rights with respect to payment of the Receivables Purchased Amount.

**I have read and agree to the terms and conditions set forth above:**

DocuSigned by:

224E17EA1D81486...

Name: __JASON MICHAEL ADELMAN__ Title: OWNER/AGENT/MANAGER    Date: __12/17/2021__

FILED: SULLIVAN COUNTY CLERK 03/21/2022 01:09 PM INDEX NO. E2022-439
NYSCEF DOC. NO. 4                                                                    RECEIVED NYSCEF: 03/21/2022

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

**17. Protections Against Default.** The following Protections 1 through 7 may be invoked by VF, immediately and without notice to any Merchant in the event:

(a) Any Merchant takes any action to discourage the use of methods of payment ordinarily and customarily used by its customers or permits any event to occur that could have an adverse effect on the use, acceptance, or authorization of checks and credit cards for the purchase of any Merchant's services and products;

(b) Any Merchant changes its arrangements with any Processor in any way that is adverse to VF;

(c) Any Merchant changes any Processor through which the Receivables are settled to another electronic check and/or credit card processor or permits any event to occur that could cause diversion of any Merchant's check and/or credit card transactions to another such processor;

(d) Any Merchant interrupts the operation of its business (other than adverse weather, natural disasters, or acts of God) or transfers, moves, sells, disposes, or otherwise conveys its business or assets without (i) the express prior written consent of VF and (ii) the written agreement of any purchaser or transferee to the assumption of all of any Merchant's obligations under this Agreement pursuant to documentation satisfactory to VF; or

(e) Any Merchant takes any action, fails to take any action, or offers any incentive—economic or otherwise—the result of which will be to induce any customer or customers to pay for any Merchant's goods or services with any means other than checks and/or credit cards that are settled through Processor. These protections are in addition to any other remedies available to VF at law, in equity, or otherwise available pursuant to this Agreement.

(f) VF considers any Event of Default listed in Section 34 to have taken place.

Protection 1: The full uncollected Receivables Purchased Amount plus all fees due under this Agreement may become due and payable in full immediately.

Protection 2. VF may enforce the provisions of the Guarantee against Guarantor. Protection

3. VF may enforce its security interest in the Collateral identified in Section 33.

Protection 4. VF may proceed to protect and enforce its rights and remedies by litigation or arbitration. Protection

5. If requested by VF, Merchant shall deliver to VF an executed assignment of lease of each Merchant's premises in favor of VF. Upon breach of any provision in this Section 17, VF may exercise its rights under such assignment of lease.

Protection 6. VF may debit any Merchant's depository accounts wherever situated by means of ACH debit or electronic or facsimile signature on a computer-generated check drawn on any Merchant's bank account or otherwise, in an amount consistent with the terms of this Agreement.

Protection 7. VF will have the right, without waiving any of its rights and remedies and without notice to any Merchant and/or Guarantor, to notify each Merchant's credit card and/or check processor of the sale of Receivables hereunder and to direct such credit card processor to make payment to VF of all or any portion of the amounts received by such credit card processor on behalf of each Merchant. Each Merchant hereby grants to VF an irrevocable power-of- attorney, which power-of-attorney will be coupled with an interest, and hereby appoints VF and its representatives as each Merchant's attorney-in-fact to take any and all action necessary to direct such new or additional credit card and/or check processor to make payment to VF as contemplated by this Section.

**18. Protection of Information.** Each Merchant and each person signing this Agreement on behalf of each Merchant and/or as Owner, in respect of himself or herself personally, authorizes VF to disclose information concerning each Merchant, Owner and/or Guarantor's credit standing and business conduct to agents, affiliates, subsidiaries, and credit reporting bureaus. Each Merchant, Guarantor, and Owner hereby waives to the maximum extent permitted by law any claim for damages against VF or any of its affiliates relating to any (i) investigation undertaken by or on behalf of VF as permitted by this Agreement or (ii) disclosure of information as permitted by this Agreement.

**19. Confidentiality.** Each Merchant understands and agrees that the terms and conditions of the products and services offered by VF, including this Agreement and any other VF documents (collectively, "Confidential Information") are proprietary and confidential information of VF. Accordingly, unless disclosure is required by law or court order, Merchant(s) shall not disclose Confidential Information of VF to any person other than an attorney, accountant, financial advisor, or employee of any Merchant who needs to know such information for the purpose of advising any Merchant ("Advisor"), provided such Advisor uses such information solely for the purpose of advising any Merchant and first agrees in writing to be bound by the terms of this Section 19.

**I have read and agree to the terms and conditions set forth above:**

DocuSigned by:

224E17EA1D81486...

Name: JASON MICHAEL ADELMAN  Title: OWNER/AGENT/MANAGER  Date: 12/17/2021

Case 7:22-cv-03376-NSR    Document 1-1    Filed 04/26/22    Page 37 of 54

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

**20. D/B/As.** Each Merchant hereby acknowledges and agrees that VF may be using "doing business as" or "d/b/a" names in connection with various matters relating to the transaction between VF and each Merchant, including the filing of UCC-1 financing statements and other notices or filings.

**21. Financial Condition and Financial Information.** Each Merchant represents, warrants, and covenants that its bank and financial statements, copies of which have been furnished to VF, and future statements which will be furnished hereafter at the request of VF, fairly represent the financial condition of each Merchant at such dates, and that since those dates there have been no material adverse changes, financial or otherwise, in such condition, operation, or ownership of any Merchant. Each Merchant has a continuing affirmative obligation to advise VF of any material adverse change in its financial condition, operation, or ownership.

**22. Governmental Approvals.** Each Merchant represents, warrants, and covenants that it is in compliance and shall comply with all laws and has valid permits, authorizations, and licenses to own, operate, and lease its properties and to conduct the business in which it is presently engaged.

**23. Authorization.** Each Merchant represents, warrants, and covenants that it and each person signing this Agreement on behalf of each Merchant has full power and authority to incur and perform the obligations under this Agreement, all of which have been duly authorized.

**24. Insurance.** Each Merchant represents, warrants, and covenants that it will maintain business-interruption insurance naming VF as loss payee and additional insured in amounts and against risks as are satisfactory to VF and shall provide VF proof of such insurance upon request.

**25. Electronic Check Processing Agreement.** Each Merchant represents, warrants, and covenants that it will not, without VF's prior written consent, change its Processor, add terminals, change its financial institution or bank account, or take any other action that could have any adverse effect upon any Merchant's obligations under this Agreement.

**26. Change of Name or Location.** Each Merchant represents, warrants, and covenants that it will not conduct its business under any name other than as disclosed to VF or change any place(s) of its business without prior written consent from VF.

**27. Estoppel Certificate.** Each Merchant represents, warrants, and covenants that it will, at any time, and from time to time, upon at least two day's prior notice from VF to that Merchant, execute, acknowledge, and deliver to VF and/or to any other person or entity specified by VF, a statement certifying that this Agreement is unmodified and in full force and effect (or, if there have been modifications, that the same is in full force and effect as modified and stating the modifications) and stating the dates which the Receivables Purchased Amount or any portion thereof have been paid.

**28. No Bankruptcy.** Each Merchant represents, warrants, and covenants that as of the date of this Agreement, it does not contemplate and has not filed any petition for bankruptcy protection under Title 11 of the United States Code and there has been no involuntary petition brought or pending against any Merchant. Each Merchant further warrants that it does not anticipate filing any such bankruptcy petition and it does not anticipate that an involuntary petition will be filed against it. Each Merchant further warrants that there will be no statutory presumption that it would have been insolvent on the date of this Agreement.

**29. Unencumbered Receivables.** Each Merchant represents, warrants, and covenants that it has good, complete, and marketable title to all Receivables, free and clear of any and all liabilities, liens, claims, changes, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges, and encumbrances of any kind or nature whatsoever or any other rights or interests that may be inconsistent with this Agreement or adverse to the interests of VF, other than any for which VF has actual or constructive knowledge as of the date of this Agreement.

**I have read and agree to the terms and conditions set forth above:**

DocuSigned by:

_224E17EA1D81486..._

Name: JASON MICHAEL ADELMAN  Title: OWNER/AGENT/MANAGER  Date: 12/17/2021

FILED: SULLIVAN COUNTY CLERK 03/21/2022 01:09 PM
NYSCEF DOC. NO. 4

Case 7:22-cv-03376-NSR    Document 1-1    Filed 04/26/22

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

**30. Stacking.** Each Merchant represents, warrants, and covenants that it will not enter into with any party other than VF any arrangement, agreement, or commitment that relates to or involves the Receivables, whether in the form of a purchase of, a loan against, collateral against, or the sale or purchase of credits against Receivables without the prior written consent of VF. The Merchant(s) will be subject to a $5,000.00 Stacking Fee.

**31. Business Purpose.** Each Merchant represents, warrants, and covenants that it is a valid business in good standing under the laws of the jurisdictions in which it is organized and/or operates, and each Merchant is entering into this Agreement for business purposes and not as a consumer for personal, family, or household purposes.

**32. Default Under Other Contracts.** Each Merchant represents, warrants, and covenants that its execution of and/or performance under this Agreement will not cause or create an event of default by any Merchant under any contract with another person or entity.

**33. Security Interest.** To secure each Merchant's payment and performance obligations to VF under this Agreement and any future agreement with VF, each Merchant hereby grants to VF a security interest in collateral(the "Collateral"), that is defined as collectively: (a) all accounts, including without limitation, all deposit accounts, accounts-receivable, and other receivables, chattel paper, documents, equipment, general intangibles, instruments, and inventory, as those terms are defined by Article 9 of the Uniform Commercial Code (the "UCC"), now or hereafter owned or acquired by any Merchant; and (b) all proceeds, as that term is defined by Article 9 of the UCC. The parties acknowledge and agree that any security interest granted to VF under any other agreement between any Merchant or Guarantor and VF (the "Cross-Collateral") will secure the obligations hereunder and under this Agreement. Negative Pledge: Each Merchant agrees not to create, incur, assume, or permit to exist, directly or indirectly, any lien on or with respect to any of the Collateral or the Cross-Collateral, as applicable.

Each Merchant agrees to execute any documents or take any action in connection with this Agreement as VF deems necessary to perfect or maintain VF's first priority security interest in the Collateral and the Cross-Collateral, including the execution of any account control agreements. Each Merchant hereby authorizes VF to file any financing statements deemed necessary by VF to perfect or maintain VF's security interest, which financing statements may contain notification that each Merchant has granted a negative pledge to VF with respect to the Collateral and the Cross-Collateral, and that any subsequent lienor may be tortiously interfering with VF's rights. Each Merchant shall be liable for and VF may charge and collect all costs and expenses, including but not limited to attorney fees, which may be incurred by VF in protecting, preserving, and enforcing VF's security interest and rights. Each Merchant further acknowledges that VF may use another legal name and/or D/B/A or an agent when designating the Secured Party when VF files the above-referenced financing statement(s).

**34. Events of Default.** An "Event of Default" may be considered to have taken place if any of the following occur:
(1) Any Merchant violates any term or covenant in this Agreement;
(2) Any representation or warranty by any Merchant in any Agreement with VF that has not been terminated proves to have been incorrect, false, or misleading in any material respect when made;
(3) Any Merchant fails to provide VF with written notice of any material change in its financial condition, operation, or ownership within seven days thereafter (unless a different notice period is specifically provided for elsewhere in this Agreement;
(4) the sending of notice of termination by any Merchant or Guarantor;
(5) Any Merchant transports, moves, interrupts, suspends, dissolves, or terminates its business without the prior written consent of VF other than a bankruptcy filing;
(6) Any Merchant transfers or sells all or substantially all of its assets without the prior written consent of VF;
(7) Any Merchant makes or sends notice of any intended bulk sale or transfer by any Merchant without the prior written consent of VF;
(8) Any Merchant uses multiple depository accounts without the prior written consent of VF;
(9) Any Merchant changes the Account without the prior written consent of VF;
(10)   VF is not provided with updated login or password information for the Account within one business day after any such change is made by any Merchant;

**I have read and agree to the terms and conditions set forth above:**

DocuSigned by:

224E17EA1D81486...

Name: __JASON MICHAEL ADELMAN__ Title: OWNER/AGENT/MANAGER   Date:_12/17/2021_

DocuSign Envelope ID: E94A4F46-FC50-45FA-861D-3C49FB1A3B03
Case 7:22-cv-03376-NSR    Document 1-1    Filed 04/26/22    Page 39 of 54

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

(11) Any Merchant fails to send bank statements, merchant account statements, or bank login information for the Account within two business days after a written request for same is made by VF;

(12) Any Merchant performs any act that reduces the value of any Collateral granted under this Agreement;

(13) Any Merchant fails to deposit its Receivables into the Account;

(14) Any Merchant causes an ACH debit to the Account by VF to be blocked or stopped without providing any advance written notice to VF, which notice may be given by e-mail to reconciliations@vertexfundinggroup.com; or

(15) Any Merchant prevents VF from collecting any part of the Receivables Purchased Amount;

(16) Any Merchant causes any ACH debit to the Account to be stopped or otherwise returned that would result in an ACH Return Code of R08, R10, or R29 and that Merchant does not within two business days thereafter provide VF with written notice thereof explaining why that Merchant caused the ACH debit to be stopped or otherwise returned, whichnotice may be given by e-mail to reconciliations@vertexfundinggroup.com; or

(17) Any Merchant defaults under any of the terms, covenants, and conditions of any other agreement with VF.

**35. Remedies.** In case any Event of Default occurs and is not waived, VF may proceed to protect and enforce its rights or remedies by suit in equity or by action at law, or both, whether for the specific performance of any covenant, agreement, or other provision contained herein, or to enforce the discharge of each Merchant's obligations hereunder, or any other legal or equitable right or remedy. All rights, powers, and remedies of VF in connection with this Agreement, including each Protection listed in Section 17, may be exercised at any time by VF after the occurrence of an Event of Default, are cumulative and not exclusive, and will be in addition to any other rights, powers, or remedies provided by law or equity. In addition to the foregoing, in case any Event of Default occurs and is not waived, VF will be entitled to the issuance of an injunction, restraining order, or other equitable relief in VF's favor, subject to court or arbitrator approval, restraining each Merchant's accounts and/or receivables up to the amount due to VF as a result of the Event of Default, and each Merchant will be deemed to have consented to the granting of an application for the same to any court or arbitral tribunal of competent jurisdiction without any prior notice to any Merchant or Guarantor and without VF being required to furnish a bond or other undertaking in connection with the application.

**36. Required Notifications.** Each Merchant is required to give VF written notice at least one day prior to any filing under Title 11 of the United States Code. Merchant(s) are required to give VF at least seven days' written notice prior to the closing of any sale of all or substantially all of any Merchant's assets or stock.

**37. Assignment.** This Agreement shall be binding upon and inure to the benefit of the parties and their respective successors and assigns, except that Merchant(s) shall not have the right to assign its rights hereunder or any interest herein without the prior written consent of VF, which consent may be withheld in VF's sole discretion. VF may assign, transfer, or sell its rights under this Agreement, including, without limitation, its rights to receive the Receivables Purchased Amount, and its rights under Section 33 of this Agreement, the Guarantee, and any other agreement,instrument, or document executed in connection with the transactions contemplated by this Agreement (a "Related Agreement"), or delegate its duties hereunder or thereunder, either in whole or in part. From and after the effective date of any such assignment or transfer by VF, whether or not any Merchant has actual notice thereof, this Agreement andeach Related Agreement shall be deemed amended and modified (without the need for any further action on the part of any Merchant or VF) such that the assignee shall be deemed a party to this  Agreement and any such Related Agreement and, to the extent provided in the assignment document between VF and such assignee (the "Assignment Agreement"), have the rights and obligations of VF under this Agreement and such Related Agreements with respect to the portion of the Receivables Purchased Amount set forth in such Assignment Agreement, including but not limited to rights in the Receivables, Collateral and Additional Collateral, the benefit of each Guarantor's guaranty regarding the full and prompt performance of every obligation that is a subject of the Guarantee, VF's rights under Section 17 of this Agreement (Protections Against Default), and to receive damages from any Merchant following a breach  of  this Agreement  by  any Merchant. In  connection  with  such  assignment, VF  may  disclose  all information  that  VF  hasrelating to any Merchant or its business. Each Merchant agrees to acknowledge any such assignment in writing upon VF's request.

**38. Notices.** All notices, requests, consents, demands, and other communications hereunder shall be delivered by certified mail, return receipt requested, or by overnight delivery with signature confirmation to the respective parties to

**I have read and agree to the terms and conditions set forth above:**

DocuSigned by:

_____

224E17EA1D81486...

Name: JASON MICHAEL ADELMAN    Title: OWNER/AGENT/MANAGER    Date: 12/17/2021

FILED: SULLIVAN COUNTY CLERK 03/21/2022 01:09 PM
NYSCEF DOC. NO. 4

Case 7:22-cv-03376-NSR    Document 1-1    Filed 04/26/22    Page 40 of 54

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

this Agreement at their addresses set forth in this Agreement and shall become effective only upon receipt. Written notice may also be given to any Merchant or Guarantor by e-mail to the E-mail Address listed on the first page of this Agreement. Each Merchant must set its spam or junk mail filter to accept e-mails sent by reconciliations@vertexfundinggroup.com and its domain. This Section is not applicable to service of process or notices in any legal proceedings.

**39. Choice of Law.** Each Merchant acknowledges and agrees that this Agreement was made in the State of New York, that the Purchase Price is being paid by VF in the State of New York, that the Receivables Purchased Amount is being delivered to VF in the State of New York, and that the State of New York has a reasonable relationship to the transactions encompassed by this Agreement. This Agreement and the relationship between VF, each Merchant, and each Guarantor will be governed by and construed in accordance with the laws of the State of New York, without regard to any applicable principles of conflict of laws.

**40. Forum and Venue Selection.** Any litigation relating to this Agreement or involving VF on one side and any Merchant or any Guarantor on the other must be commenced and maintained in any court located in the Counties of Nassau, New York, or Sullivan in the State of New York (the "Acceptable Forums"). The parties agree that the Acceptable Forums are convenient, submit to the jurisdiction of the Acceptable Forums, and waive any and all objections to the jurisdiction or venue of the Acceptable Forums. If any litigation is initiated in any other venue or forum, the parties waive any right to oppose any motion or application made by any party to transfer such litigation to an Acceptable Forum. The parties agree that this Agreement encompasses the transaction of business within the City of New York and that the Civil Court of the City of New York ("Civil Court") will have jurisdiction over any litigation relating to this Agreement that is within the jurisdictional limit of the Civil Court. In addition to the Acceptable Forums, any action or proceeding to enforce a judgment or arbitration award against any Merchant or Guarantor or to restrain or collect any amount due to VF may be commenced and maintained in any other court of competent jurisdiction.

**41. Jury Waiver.** The parties agree to waive trial by jury in any dispute between them.

**42. Counterclaim Waiver.** In any litigation or arbitration commenced by VF, each Merchant and eachGuarantor will not be permitted to interpose any counterclaim.

**43. Statutes of Limitations.** Each Merchant and each Guarantor agree that any claim that is not asserted against VF within one year of its accrual will be time barred.

**44. Costs.** Each Merchant and each Guarantor must pay all of VF's reasonable costs associated with a breach by any Merchant of the covenants in this Agreement and the enforcement thereof, including but not limited to collection agency fees, attorney fees, which may include a contingency fee of up to 40% of the amount claimed, expert witness fees, and costs of suit.

**45. Prejudgment and Postjudgment Interest.** If VF becomes entitled to the entry of a judgment against any Merchant or any Guarantor, then VF will be entitled to the recovery of prejudgment interest at a rate of 24% per annum (or 16% per annum if any Merchant is a sole proprietorship), or the maximum rate permitted by applicable law if less, and upon entry of any such judgment, it will accrue interest at a postjudgment rate of 24% per annum (or 16% per annum if any Merchant is a sole proprietorship), or the maximum rate permitted by applicable law if less, which rate will govern over the statutory rate of interest up until actual satisfaction of the judgment.

**46. Legal Fees.** If VF prevails in any litigation or arbitration with any Merchant or any Guarantor, then that Merchant and/or Guarantor must pay VF's reasonable attorney fees, which may include a contingency fee of up to 40% of the amount claimed.

**47. Class Action Waiver.** VF, each Merchant, and each Guarantor agree that they may bring claims against each other relating to this Agreement only in their individual capacities, and not as a plaintiff or class action member inany purported class or representative proceedings.

**I have read and agree to the terms and conditions set forth above:**

DocuSigned by:

224E17EA1D81486...

Name: JASON MICHAEL ADELMAN  Title: OWNER/AGENT/MANAGER  Date: 12/17/2021

Case 7:22-cv-03376-NSR Document 1-1 Filed 04/26/22 Page 41 of 54

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

**48. Arbitration.** Any action or dispute relating to this Agreement or involving VF on one side and any Merchant or any Guarantor on the other, including, but not limited to issues of arbitrability, will, at the option of any party to such action or dispute, be determined by arbitration before a single arbitrator. The arbitration will be administered either by Arbitration Services, Inc. under its Commercial Arbitration Rules as are in effect at that time, which rules are available at www.arbitrationservicesinc.com, or by Mediation & Commercial Arbitration, Inc. under its Commercial Arbitration Rules as are in effect at that time, which rules are available at www.mcarbitration.org. Once an arbitration is initiated with one of these arbitral forums, it must be maintained exclusively before that arbitral forum and the other arbitral forum specified herein may not be used. Any arbitration relating to this Agreement must be conducted in the Counties of Nassau, New York, Queens, or Kings in the State of New York. Notwithstanding any provision of any applicable arbitration rules, any witness in an arbitration who does not reside in or have a place for the regular transaction of business located in New York City or the Counties of Nassau, Suffolk, or Westchester in the State of New York will be permitted to appear and testify remotely by telephone or video conferencing. In case any Event of Default occurs and is not waived, each Merchant and each Guarantor consents to VF making an application to the arbitrator, without notice to any Merchant or any Guarantor, for the issuance of an injunction, restraining order, or other equitable relief in VF's favor, subject to court or arbitrator approval, restraining each Merchant's accounts and/or receivables up to the amount due to VF as a result of the Event of Default.

Each Merchant acknowledges and agrees that this Agreement is the product of communications conducted by telephone and the Internet, which are instrumentalities of interstate commerce, that the transactions contemplated under this Agreement will be made by wire transfer and ACH, which are also instrumentalities of interstate commerce, and that this Agreement therefore evidences a transaction affecting interstate commerce. Accordingly, notwithstanding any provision in this Agreement to the contrary, all matters of arbitration relating to this Agreement will be governed by and construed in accordance with the provisions of the Federal Arbitration Act, codified as Title 9 of the United States Code, however any application for injunctive relief in aid of arbitration or to confirm an arbitration award may be made under Article 75 of the New York Civil Practice Law and Rules. The arbitration agreement contained in this Section may also be enforced by any employee, agent, attorney, member, manager, officer, subsidiary, affiliate entity, successor, or assign of VF.

**49. Service of Process.** Each Merchant and each Guarantor consent to service of process and legal notices made by First Class or Priority Mail delivered by the United States Postal Service and addressed to the Contact Address set forth on the first page of this Agreement or any other address(es) provided in writing to VF by any Merchant or any Guarantor, and unless applicable law or rules provide otherwise, any such service will be deemed complete upon dispatch. Each Merchant and each Guarantor agrees that it will be precluded from asserting that it did not receive service of process or any other notice mailed to the Contact Address set forth on the first page of this Agreement if it does not furnish a certified mail return receipt signed by VF demonstrating that VF was provided with notice of a change in the Contact Address.

**50. Survival of Representation, etc.** All representations, warranties, and covenants herein shall survive the execution and delivery of this Agreement and shall continue in full force until all obligations under this Agreement shall have been satisfied in full and this Agreement shall have terminated.

**51. Waiver.** No failure on the part of VF to exercise, and no delay in exercising, any right under this Agreement, shall operate as a waiver thereof, nor shall any single or partial exercise of any right under this Agreement preclude any other or further exercise thereof or the exercise of any other right. The remedies provided hereunder are cumulative and not exclusive of any remedies provided by law or equity.

**52. Independent Sales Organizations/Brokers.** Each Merchant and each Guarantor acknowledge that it may have been introduced to VF by or received assistance in entering into this Agreement or its Guarantee from an independent sales organization or broker ("ISO"). Each Merchant and each Guarantor agree that any ISO is separate from and is not an agent or representative of VF. Each Merchant and each Guarantor acknowledge that VF is not bound by any promises or agreements made by any ISO that are not contained within this Agreement. Each Merchant and each Guarantor exculpate from liability and agree to hold harmless and indemnify VF and its officers, directors, members, shareholders, employees, and agents from and against all losses, damages, claims, liabilities, and expenses

**I have read and agree to the terms and conditions set forth above:**

DocuSigned by:

_____
—224E17EA1D81486...

Name: JASON MICHAEL ADELMAN   Title: OWNER/AGENT/MANAGER   Date: 12/17/2021

FILED: SULLIVAN COUNTY CLERK 03/21/2022 01:09 PM INDEX NO. E2022-439

NYSCEF DOC. NO. 4 RECEIVED NYSCEF: 03/21/2022

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

(including reasonable attorney and expert fees) incurred by any Merchant or any Guarantor resulting from any act or omission by any ISO. Each Merchant and each Guarantor acknowledge that any fee that they paid to any ISO for its services is separate and apart from any payment under this Agreement. Each Merchant and each Guarantor acknowledge that VF does not in any way require the use of an ISO and that any fees charged by any ISO are not required as a condition or incident to this Agreement.

**53.  Modifications; Agreements.** No modification, amendment, waiver, or consent of any provision of this Agreement shall be effective unless the same shall be in writing and signed by all parties.

**I have read and agree to the terms and conditions set forth above:**

Name: __JASON MICHAEL ADELMAN__ Title: OWNER/AGENT/MANAGER  Date: __12/17/2021__

Case 7:22-cv-03376-NSR   Document 1-1   Filed 04/26/22   Page 43 of 54

Page **12** of 18

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

**54. Severability.** If any provision of this Agreement is deemed invalid or unenforceable as written, it will be construed, to the greatest extent possible, in a manner which will render it valid and enforceable, and any limitation on the scope or duration of any such provision necessary to make it valid and enforceable will be deemed to be part thereof. If any provision of this Agreement is deemed void, all other provisions will remain in effect.

**55. Headings.** Headings of the various articles and/or sections of this Agreement are for convenience only and do not necessarily define, limit, describe, or construe the contents of such articles or sections.

**56. Attorney Review.** Each Merchant acknowledges that it has had an opportunity to review this Agreement and all addenda with counsel of its choosing before signing the documents or has chosen not to avail itself of the opportunity to do so.

**57. Entire Agreement.** This Agreement, inclusive of all addenda, if any, executed simultaneously herewith constitutes the full understanding of the parties to the transaction herein and may not be amended, modified, or canceled except in writing signed by all parties. Should there arise any conflict between this Agreement and any other document preceding it, this Agreement will govern. This Agreement does not affect any previous agreement between the parties unless such an agreement is specifically referenced herein. This Agreement will not be affected by any subsequent agreement between the parties unless this Agreement is specifically referenced therein. VF will not be permitted to enforce any of its rights under this Agreement if so expressed by in writing by Gene Rosen's Law Firm.

**58. Counterparts; Fax and Electronic Signatures.** This Agreement may be executed electronically and in counterparts. Facsimile and electronic copies of this Agreement will have the full force and effect of an original.

## EACH UNDERSIGNED HEREBY ACCEPTS THE TERMS OF THIS AGREEMENT

**FOR THE MERCHANT/OWNER (#1)**

By: JASON MICHAEL ADELMAN     OWNER        [DocuSigned by: 224E17EA1D81486...]
     (Print Name)           (Print Title)                 (Signature)

SS#█████████                 Driver License Number _____

**FOR THE MERCHANT/OWNER (#2)**

By: _____     _____     _____
     (Print Name)           (Print Title)                 (Signature)

SS#_____         Driver License Number _____

Approved for VERTEX FUNDING LLC by: _____

FILED: SULLIVAN COUNTY CLERK 03/21/2022 01:09 PM
NYSCEF DOC. NO. 4
INDEX NO. E2022-439
RECEIVED NYSCEF: 03/21/2022

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

## GUARANTEE

**G1. Personal Guarantee of Performance.** This is a personal guaranty of performance, dated __12/17/2021__, of the Standard Merchant Cash Advance Agreement, dated 12/17/2021 ("Agreement"), inclusive of all addenda, if any, executed simultaneously therewith, by and between VERTEX FUNDING LLC ("VF") and __HCF INSURANCE AGENCY__

("Merchant"). Each undersigned Guarantor hereby guarantees each Merchant's performance of all of the representations, warranties, and covenants made by each Merchant to VF in the Agreement, inclusive of all addenda, if any, executed simultaneously herewith, as the Agreement may be renewed, amended, extended, or otherwise modified (the "Guaranteed Obligations"). Each Guarantor's obligations are due at the time of any breach by any Merchant of any representation, warranty, or covenant made by any Merchant in the Agreement.

**G2. Communications.** VF may use automated telephone dialing, text messaging systems, and e-mail to provide messages to Guarantor(s) about Merchant(s)'s account. Telephone messages may be played by a machine automatically when the telephone is answered, whether answered by an Owner, a Guarantor, or someoneelse. These messages may also be recorded by the recipient's answering machine or voice mail. Each Guarantor gives VF permission to call or send a text message to any telephone number given to VF in connection with this Agreement and to play pre-recorded messages and/or send text messages with information about this Agreement and/or any Merchant's account over the phone. Each Guarantor also gives VF permission to communicate such information to them by e-mail. Each Guarantor agrees that VF will not be liable to any of them for any such calls or electronic communications, even if information is communicated to an unintended recipient. Each Guarantor acknowledges that when they receive such calls or electronic communications, they may incur a charge from the company that providest hem with telecommunications, wireless, and/or Internet services, and that VF has no liability for any such charges.

**G3. Guarantor Waivers.** If VF considers any Event of Default to have taken place under the Agreement, then VF may enforce its rights under this Guarantee without first seeking to obtain payment from any Merchant, any other guarantor, or any Collateral, Additional Collateral, or Cross-Collateral VF may hold pursuant to this Guarantee or any other agreement or guarantee. VF does not have to notify any Guarantor of any of the following events and Guarantor(s) will not be released from its obligations under this Guarantee even if it is not notified of: (i) any Merchant's failure to pay timely any amount owed under the Agreement; (ii) any adverse change in any Merchant's financial condition or business; (iii) any sale or other disposition of any collateral securing the Guaranteed Obligations or any other guarantee of the Guaranteed Obligations; (iv) VF's acceptance of the Agreement with any Merchant; and (v) any renewal, extension, or other modification of the Agreement or any Merchant's other obligations to VF. In addition, VF may take any of the following actions without releasing any Guarantor from any obligations under this Guarantee: (i) renew, extend, or otherwise modify the Agreement or any Merchant's other obligations to VF; (ii) ifthere is more than one Merchant, release a Merchant from its obligations to VF such that at least one Merchant remains obligated to VF; (iii) sell, release, impair, waive, or otherwise fail to realize upon any collateral securing the Guaranteed Obligations or any other guarantee of the Guaranteed Obligations; and (iv) foreclose on any collateral securing the Guaranteed Obligations or any other guarantee of the Guaranteed Obligations in a manner that impairsor precludes the right of Guarantor to obtain reimbursement for payment under the Agreement. Until the Receivables Purchased Amount and each Merchant's other obligations to VF under the Agreement and this Guarantee are paid in full, each Guarantor shall not seek reimbursement from any Merchant or any other guarantor for any amounts paid by it under the Agreement. Each Guarantor permanently waives and shall not seek to exercise anyof the following rights that it may have against any Merchant, any other guarantor, or any collateral provided by any Merchant or any other guarantor, for any amounts paid by it or acts performed by it under this Guarantee: (i) subrogation; (ii) reimbursement; (iii) performance; (iv) indemnification; or (v) contribution.

**G4. Joint and Several Liability.** The obligations hereunder of the persons or entities constituting each Guarantor under this Guarantee are joint and several.

**G5. Injunctive Relief.** In case any Event of Default occurs and is not waived, VF will be entitled to the issuance of an injunction, restraining order, or other equitable relief in VF's favor, subject to court or arbitrator approval, restraining each Guarantor's accounts and/or receivables up to the amount due to VF as a result of the Event of

I have read and agree to the terms and conditions set forth above:

DocuSigned by:

Name: __JASON MICHAEL ADELMAN__ Title: OWNER/AGENT/MANAGER    Date: __12/17/2021__

Case 7:22-cv-03376-NSR   Document 1-1   Filed 04/26/22   Page 45 of 54

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

Default, and each Guarantor will be deemed to have consented to the granting of an application for the same to any court or arbitral tribunal of competent jurisdiction without any prior notice to any Merchant or Guarantor and without VF being required to furnish a bond or other undertaking in connection with the application.

**G6. Choice of Law.** Each Guarantor acknowledges and agrees that the Agreement and this Guarantee were made in the State of New York, that the Purchase Price is being paid by VF in the State of New York, that the Receivables Purchased Amount is being delivered to VF in the State of New York, and that the State of New York has a reasonable relationship to the transactions encompassed by the Agreement and this Guarantee. This Guarantee and the relationship between VF, each Merchant, and each Guarantor will be governed by and construed in accordance with the laws of the State of New York, without regard to any applicable principles of conflict of laws.

**G7. Forum and Venue Selection.** Any litigation relating to this Agreement or this Guarantee or involving VF on one side and any Merchant or any Guarantor on the other must be commenced and maintained in any court located in the Counties of Nassau, New York, or Sullivan in the State of New York (the "Acceptable Forums"). The parties agree that the Acceptable Forums are convenient, submit to the jurisdiction of the Acceptable Forums, and waive any and all objections to the jurisdiction or venue of the Acceptable Forums. If any litigation is initiated in any other venue or forum, the parties waive any right to oppose any motion or application made by any party to transfer such litigation to an Acceptable Forum. The parties agree that this Guarantee encompasses the transaction of business within the City of New York and that the Civil Court of the City of New York ("Civil Court") will have jurisdiction over any litigation relating to this Guarantee that is within the jurisdictional limit of the Civil Court. In addition to the Acceptable Forums, any action or proceeding to enforce a judgment or arbitration award against any Merchant or Guarantor or to restrain or collect any amount due to VF may be commenced and maintained in any other court of competent jurisdiction.

**G8. Jury Waiver.** Each Guarantor agrees to waive trial by jury in any dispute with VF.

**G9. Counterclaim Waiver.** In any litigation or arbitration commenced by VF, each Merchant and each Guarantor will not be permitted to interpose any counterclaim.

**G10. Statutes of Limitations.** Each Merchant and each Guarantor agree that any claim that is not asserted against VF within one year of its accrual will be time barred.

**G11. Costs.** Each Merchant and each Guarantor must pay all of VF's reasonable costs associated with a breach by any Merchant of the covenants in this Agreement or this Guarantee and the enforcement thereof, including but not limited to collection agency fees, expert witness fees, and costs of suit.

**G12. Prejudgment and Postjudgment Interest.** If VF becomes entitled to the entry of a judgment against any Merchant or any Guarantor, then VF will be entitled to the recovery of prejudgment interest at a rate of 24% per annum (or 16% per annum if any Merchant is a sole proprietorship), or the maximum rate permitted by applicable law if less, and upon entry of any such judgment, it will accrue interest at a postjudgment rate of 24% per annum (or 16% per annum if any Merchant is a sole proprietorship), or the maximum rate permitted by applicable law if less, which rate will govern over the statutory rate of interest up until actual satisfaction of the judgment.

**G13. Legal Fees.** If VF prevails in any litigation or arbitration with any Merchant or any Guarantor, then that Merchant and/or Guarantor must pay VF's reasonable attorney fees, which may include a contingency fee of up to 40% of the amount claimed.

**G14. Class Action Waiver.** VF, each Merchant, and each Guarantor agree that they may bring claims against each other relating to this Agreement only in their individual capacities, and not as a plaintiff or class action member in any purported class or representative proceedings.

**G15. Arbitration.** Any action or dispute relating to this Agreement or this Guarantee or involving VF on one side and any Merchant or any Guarantor on the other, including, but not limited to issues of arbitrability, will, at the option

**I have read and agree to the terms and conditions set forth above:**

DocuSigned by:

224E17EA1D81486...

Name: JASON MICHAEL ADELMAN   Title: OWNER/AGENT/MANAGER   Date: 12/17/2021

FILED: SULLIVAN COUNTY CLERK 03/21/2022 01:09 PM

Case 7:22-cv-03376-NSR    Document 1-1    Filed 04/26/22

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

of any party to such action or dispute, be determined by arbitration before a single arbitrator. The arbitration will be administered either by Arbitration Services, Inc. under its Commercial Arbitration Rules as are in effect at that time, which rules are available at www.arbitrationservicesinc.com, or by Mediation & Commercial Arbitration, Inc. under its Commercial Arbitration Rules as are in effect at that time, which rules are available at www.mcarbitration.org. Once an arbitration is initiated with one of these arbitral forums, it must be maintained exclusively before that arbitral forum and the other arbitral forum specified herein may not be used. Any arbitration relating to this Agreement or this Guarantee must beconducted in the Counties of Nassau, New York, Queens, or Kings in the State of New York. Notwithstanding any provision of any applicable arbitration rules, any witness in an arbitration who does not reside in or have a place for the regular transaction of business located in New York City or the Counties of Nassau, Suffolk, or Westchester in the State ofNew York will be permitted to appear and testify remotely by telephone or video conferencing. In case any Event ofDefault occurs and is not waived, each Guarantor consents to VF making an application to the arbitrator, without notice to any Merchant or any Guarantor, for the issuance of an injunction, restraining order, or other equitable relief in VF's favor, subject to court or arbitrator approval, restraining each Guarantor's accounts and/or receivables up to the amount due to VF as a result of the Event of Default.

Each Guarantor acknowledges and agrees that the Agreement and this Guarantee are the product of communications conducted by telephone and the Internet, which are instrumentalities of interstate commerce, that the transactions contemplated under the Agreement and this Guarantee will be made by wire transfer and ACH, which are also instrumentalities of interstate commerce, and that the Agreement and this Guarantee therefore evidence a transaction affecting interstate commerce. Accordingly, notwithstanding any provision in the Agreement or this Guarantee to the contrary, all matters of arbitration relating to the Agreement or this Guarantee will be governed by and construed in accordance with the provisions of the Federal Arbitration Act, codified as Title 9 of the United States Code, however any application for injunctive relief in aid of arbitration or to confirm an arbitration award may be made under Article 75 of the New York Civil Practice Law and Rules. The arbitration agreement contained in this Section may also be enforced by any employee, agent, attorney, member, manager, officer, subsidiary, affiliate entity, successor, or assign of VF.

**G16. Service of Process.** Each Merchant and each Guarantor consent to service of process and legal notices made by First Class or Priority Mail delivered by the United States Postal Service and addressed to the Contact Address set forth on the first page of the Agreement or any other address(es) provided in writing to VF by any Merchant or any Guarantor, and unless applicable law or rules provide otherwise, any such service will be deemed complete upon dispatch. Each Merchant and each Guarantor agrees that it will be precluded from asserting that it did not receive service of process or any other notice mailed to the Contact Address set forth on the first page of the Agreement if it does not furnish a certified mail return receipt signed by VF demonstrating that VF was provided with notice of a change in the Contact Address.

**G17. Severability.** If any provision of this Guarantee is deemed invalid or unenforceable as written, it will be construed, to the greatest extent possible, in a manner which will render it valid and enforceable, and any limitation on the scope or duration of any such provision necessary to make it valid and enforceable will be deemed to be part thereof. If any provision of this Guarantee is deemed void, all other provisions will remain in effect.

**G18. Survival.** The provisions of Sections G2, G3, G4, G5, G6, G7, G8, G9, G10, G11, G12, G13, G14, G15, G16, G17, G18, G19, G20, G21, and G22 shall survive any termination of this Guarantee.

**G19. Headings.** Headings of the various articles and/or sections of this Guarantee are for convenience only and do not necessarily define, limit, describe, or construe the contents of such articles or sections.

**G20. Attorney Review.** Each Guarantor acknowledges that it has had an opportunity to review this Guarantee, the Agreement, and all addenda with counsel of its choosing before signing the documents or has chosen not to availitself of the opportunity to do so.

**I have read and agree to the terms and conditions set forth above:**

DocuSigned by:

224E17EA1D81486...

Name: JASON MICHAEL ADELMAN  Title: OWNER/AGENT/MANAGER   Date: 12/17/2021

FILED: SULLIVAN COUNTY CLERK 03/21/2022 01:09 PM INDEX NO. E2022-439

NYSCEF DOC. NO. 4                                                                      RECEIVED NYSCEF: 03/21/2022

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

**G21. Entire Agreement.** This Guarantee, inclusive of all addenda, if any, executed simultaneously herewith may not be amended, modified, or canceled except in writing signed by all parties. Should there arise any conflict between this Guarantee and any other document preceding it, this Guarantee will govern. This Guarantee does not affect any previous agreement between the parties unless such an agreement is specifically referenced in the Agreement or herein. This Guarantee will not be affected by any subsequent agreement between the parties unless this Guarantee is specifically referenced therein.

**G22. Counterparts; Fax and Electronic Signatures.** This Guarantee may be executed electronically and in counterparts. Facsimile and electronic copies of this Guarantee will have the full force and effect of an original.

THE TERMS, DEFINITIONS, CONDITIONS AND INFORMATION SET FORTH IN THE "STANDARDMERCHANT CASH ADVANCE AGREEMENT", INCLUDING THE "TERMS AND CONDITIONS", ARE HEREBY INCORPORATED IN AND MADE A PART OF THIS GUARANTEE. CAPITALIZED TERMS NOT DEFINED IN THIS GUARANTEE SHALL HAVE THE MEANING SET FORTH IN THE STANDARD MERCHANT CASH ADVANCE AGREEMENT, INCLUDING THE TERMS AND CONDITIONS.

### EACH UNDERSIGNED HEREBY ACCEPTS THE TERMS OF THIS GUARANTEE

**GUARANTOR (#1)**

By:  JASON MICHAEL ADELMAN _____                DocuSigned by: _____
                    (Print Name)                                                             224E17EA1D81486...    (Signature)

SS# ███████_____                          Driver License Number _____

**GUARANTOR (#2)**

By: _____                       _____
                    (Print Name)                                                                         (Signature)

SS#_____                        Driver License Number _____

FILED: SULLIVAN COUNTY CLERK 03/21/2022 01:09 PM
NYSCEF DOC. NO. 4

Case 7:22-cv-03376-NSR    Document 1-1    Filed 04/26/22    Page 48 of 54

**STANDARD MERCHANT CASH ADVANCE AGREEMENT**

# BANK INFORMATION

Dear Merchant,

Thank you for accepting this offer from VERTEX FUNDING LLC . We look forward to being your funding partner.

You authorize VERTEX FUNDING LLC to collect the Receivables Purchased Amount under this Agreement by ACH debiting your bank account with the bank listed below.

VERTEX FUNDING LLC  will require viewing access to your bank account each business day.

VERTEX FUNDING LLC will also require viewing access to your bank account, prior to funding,as part of our underwriting process.

Please fill out the form below with the information necessary to access your account.

**\* Be sure to indicate capital or lower case letters.**

Name of bank:
_____

Name of account: _____

Account number:                          Routing number:

_____          _____

Bank portal website: _____

Username: _____

Password: _____

1: Security                               Question/Answer

_____

2: Security                               Question/Answer

_____

3: Security                               Question/Answer

_____

Any other information necessary to access
your account:

_____
If you have any questions please feel free to contact us directly at (718) 702-0006.

**I have read and agree to the terms and conditions set forth above:**

_____

Name: _JASON MICHAEL ADELMAN_ Title: _OWNER/AGENT/MANAGER_ Date: _12/17/2021_

DocuSigned by:

224E17EA1D81486...

Case 7:22-cv-03376-NSR     Document 1-1     Filed 04/26/22     Page 49 of 54

## Referral Information

**4 valid references are required to receive funding. References will be verified.**

**Name:** _____

**Relation:** _____

**Phone Number:** _____

**Email Address:** _____


**Name:** _____

**Relation:** _____

**Phone Number:** _____

**Email Address:** _____


**Name:** _____

**Relation:** _____

**Phone Number:** _____

**Email Address:** _____


**Name:** _____

**Relation:** _____

**Phone Number:** _____

**Email Address:** _____

DocuSign Envelope ID: Case 7:22-cv-03376-NSR Document 1-1 Filed 04/26/22 Page 50 of 54

## DECLARATION OF ORDINARY COURSE OF BUSINESS

Each undersigned hereby declares the following:

1. I am duly authorized to sign the Standard Merchant Cash Advance Agreement ("Agreement"), dated __12/17/2021__, between VERTEX FUNDING LLC("VF") and __HCF INSURANCE AGENCY__ ("Merchant") on behalf of Merchant.

2. This Declaration incorporates by reference the Agreement and every addendum to it.

3. I acknowledge that I am authorized to sign the Agreement and every addendum to it on behalf of each Merchant.

4. I acknowledge that I had sufficient time to review the Agreement and every addendum to it before signing it.

5. I acknowledge that I had an opportunity to seek legal advice from counsel of my choosing before signing the Agreement and every addendum to it.

6. I acknowledge that each Merchant is entering into the Agreement voluntarily and without any coercion.

7. I acknowledge that each Merchant is entering into the Agreement in the ordinary course of its business.

8. I acknowledge that the payments to be made from any Merchant to VF under the Agreement are being made in the ordinary course of each Merchant's business.

9. I am aware of each Merchant's right to request a reconciliation of the payments made under the Agreement at any time.

10. **I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.**

Executed on __12/17/2021__
(Date)

## FOR THE MERCHANT/OWNER (#1)

By: __JASON MICHAEL ADELMAN__  __OWNER/AGENT/MANAGER__  __224E17E...(Signature)__
(Print Name)  (Print Title)  (Signature)

## FOR THE MERCHANT/OWNER (#2)

By: _____  _____  _____
(Print Name)  (Print Title)  (Signature)

| Amount | Date | Description | Deal ID | Merchant Name | Category |
|---|---|---|---|---|---|
| 6041.67 | 12/21/2021 | VERTEX FUNDING L HCF INSURA Dec 21 | C AA728166 | HCF INSURANCE AGENCY | Merchant Payment |
| 6041.67 | 12/21/2021 | VERTEX FUNDING L HCF INSURA Dec 21 | C AA728166 | HCF INSURANCE AGENCY | Merchant Payment |
| 6041.67 | 12/22/2021 | VERTEX FUNDING L HCF INSURA Dec 22 | C AA728166 | HCF INSURANCE AGENCY | Merchant Payment |
| 6041.67 | 12/23/2021 | VERTEX FUNDING L HCF INSURA Dec 23 | C AA728166 | HCF INSURANCE AGENCY | Merchant Payment |
| -6041.67 | 12/24/2021 | | AA728166 | HCF INSURANCE AGENCY | Bounce |
| 6041.67 | 12/24/2021 | VERTEX FUNDING L HCF INSURA Dec 24 | C AA728166 | HCF INSURANCE AGENCY | Merchant Payment |
| 6041.67 | 12/27/2021 | ACH RETURN DEC 23 | AA728166 | HCF INSURANCE AGENCY | Bounce |
| 6041.67 | 12/27/2021 | VERTEX FUNDING L HCF INSURA Dec 27 | C AA728166 | HCF INSURANCE AGENCY | Merchant Payment |
| 6041.67 | 12/28/2021 | VERTEX FUNDING L HCF INSURA Dec 28 | C AA728166 | HCF INSURANCE AGENCY | Merchant Payment |
| 6041.67 | 12/29/2021 | VERTEX FUNDING L HCF INSURA Dec 29 | C AA728166 | HCF INSURANCE AGENCY | Merchant Payment |
| -6041.67 | 12/30/2021 | | AA728166 | HCF INSURANCE AGENCY | Bounce |
| 6041.67 | 12/30/2021 | VERTEX FUNDING L HCF INSURA Dec 30 | C AA728166 | HCF INSURANCE AGENCY | Merchant Payment |
| -6041.67 | 12/31/2021 | | AA728166 | HCF INSURANCE AGENCY | Bounce |
| 6041.67 | 12/31/2021 | VERTEX FUNDING L HCF INSURA Dec 31 | C AA728166 | HCF INSURANCE AGENCY | Merchant Payment |
| 6041.67 | 1/3/2022 | VERTEX FUNDING L HCF INSURA Jan 3 | CCD AA728166 | HCF INSURANCE AGENCY | Merchant Payment |
| 18125.01 | 1/3/2022 | VERTEX FUNDING L HCF INSURA Jan 03 | C AA728166 | HCF INSURANCE AGENCY | Merchant Payment |
| 6041.67 | 1/4/2022 | VERTEX FUNDING L HCF INSURA Jan 4 | CCD AA728166 | HCF INSURANCE AGENCY | Merchant Payment |
| -18125 | 1/5/2022 | | AA728166 | HCF INSURANCE AGENCY | Bounce |
| -6041.67 | 1/5/2022 | | AA728166 | HCF INSURANCE AGENCY | Bounce |
| 6041.67 | 1/5/2022 | VERTEX FUNDING L HCF INSURA Jan 5 | CCD AA728166 | HCF INSURANCE AGENCY | Merchant Payment |
| 6041.67 | 1/6/2022 | VERTEX FUNDING L HCF INSURA Jan 6 | CCD AA728166 | HCF INSURANCE AGENCY | Merchant Payment |
| 6041.67 | 1/7/2022 | VERTEX FUNDING L HCF INSURA Jan 7 | CCD AA728166 | HCF INSURANCE AGENCY | Merchant Payment |
| 6041.67 | 1/10/2022 | VERTEX FUNDING L HCF INSURA Jan 10 | C AA728166 | HCF INSURANCE AGENCY | Merchant Payment |
| 6041.67 | 1/11/2022 | VERTEX FUNDING L HCF INSURA Jan 11 | C AA728166 | HCF INSURANCE AGENCY | Merchant Payment |
| 6041.67 | 1/12/2022 | VERTEX FUNDING L HCF INSURA Jan 12 | C AA728166 | HCF INSURANCE AGENCY | Merchant Payment |
| 6041.67 | 1/13/2022 | VERTEX FUNDING L HCF INSURA Jan 13 | C AA728166 | HCF INSURANCE AGENCY | Merchant Payment |
| 6041.67 | 1/14/2022 | VERTEX FUNDING L HCF INSURA Jan 14 | C AA728166 | HCF INSURANCE AGENCY | Merchant Payment |
| 6041.67 | 1/18/2022 | VERTEX FUNDING L HCF INSURA Jan 18 | C AA728166 | HCF INSURANCE AGENCY | Merchant Payment |
| 6041.67 | 1/19/2022 | VERTEX FUNDING L HCF INSURA Jan 19 | C AA728166 | HCF INSURANCE AGENCY | Merchant Payment |
| -6041.67 | 1/20/2022 | | AA728166 | HCF INSURANCE AGENCY | Bounce |
| 6041.67 | 1/20/2022 | VERTEX FUNDING L HCF INSURA Jan 20 | C AA728166 | HCF INSURANCE AGENCY | Merchant Payment |
| -6041.67 | 1/21/2022 | | AA728166 | HCF INSURANCE AGENCY | Bounce |
| 6041.67 | 1/21/2022 | VERTEX FUNDING L HCF INSURA Jan 21 | C AA728166 | HCF INSURANCE AGENCY | Merchant Payment |
| -6041.67 | 1/24/2022 | | AA728166 | HCF INSURANCE AGENCY | Bounce |
| 6041.67 | 1/24/2022 | VERTEX FUNDING L HCF INSURA Jan 24 | C AA728166 | HCF INSURANCE AGENCY | Merchant Payment |
| -6041.67 | 1/25/2022 | | AA728166 | HCF INSURANCE AGENCY | Bounce |
| 6041.67 | 1/25/2022 | VERTEX FUNDING L HCF INSURA Jan 25 | C AA728166 | HCF INSURANCE AGENCY | Merchant Payment |
| 6041.67 | 1/26/2022 | VERTEX FUNDING L HCF INSURA Jan 26 | C AA728166 | HCF INSURANCE AGENCY | Merchant Payment |
| -6041.67 | 1/27/2022 | | AA728166 | HCF INSURANCE AGENCY | Bounce |
| 6041.67 | 1/27/2022 | VERTEX FUNDING L HCF INSURA Jan 27 | C AA728166 | HCF INSURANCE AGENCY | Merchant Payment |
| 6041.67 | 1/28/2022 | VERTEX FUNDING L HCF INSURA Jan 28 | C AA728166 | HCF INSURANCE AGENCY | Merchant Payment |
| -6041.67 | 1/28/2022 | | AA728166 | HCF INSURANCE AGENCY | Bounce |
| 6041.67 | 1/31/2022 | VERTEX FUNDING L HCF INSURA Jan 31 | C AA728166 | HCF INSURANCE AGENCY | Merchant Payment |
| -6041.67 | 1/31/2022 | | AA728166 | HCF INSURANCE AGENCY | Bounce |
| 6041.67 | 2/1/2022 | VERTEX FUNDING L HCF INSURA Feb 1 | CCD AA728166 | HCF INSURANCE AGENCY | Merchant Payment |
| -6041.67 | 2/1/2022 | | AA728166 | HCF INSURANCE AGENCY | Bounce |
| 6041.67 | 2/2/2022 | VERTEX FUNDING L HCF INSURA Feb 2 | CCD AA728166 | HCF INSURANCE AGENCY | Merchant Payment |
| -6041.67 | 2/2/2022 | | AA728166 | HCF INSURANCE AGENCY | Bounce |
| 6041.67 | 2/3/2022 | VERTEX FUNDING L HCF INSURA Feb 3 | CCD AA728166 | HCF INSURANCE AGENCY | Merchant Payment |
| -6041.67 | 2/3/2022 | | AA728166 | HCF INSURANCE AGENCY | Bounce |
| 6041.67 | 2/4/2022 | VERTEX FUNDING L HCF INSURA Feb 4 | CCD AA728166 | HCF INSURANCE AGENCY | Merchant Payment |
| -6041.67 | 2/4/2022 | | AA728166 | HCF INSURANCE AGENCY | Bounce |
| 6041.67 | 2/7/2022 | VERTEX FUNDING L HCF INSURA Feb 7 | CCD AA728166 | HCF INSURANCE AGENCY | Merchant Payment |
| -6041.67 | 2/7/2022 | | AA728166 | HCF INSURANCE AGENCY | Bounce |
| 6041.67 | 2/8/2022 | VERTEX FUNDING L HCF INSURA Feb 8 | CCD AA728166 | HCF INSURANCE AGENCY | Merchant Payment |
| -6041.67 | 2/8/2022 | | AA728166 | HCF INSURANCE AGENCY | Bounce |
| 6041.67 | 2/9/2022 | VERTEX FUNDING L HCF INSURA Feb 9 | CCD AA728166 | HCF INSURANCE AGENCY | Merchant Payment |
| -6041.67 | 2/9/2022 | | AA728166 | HCF INSURANCE AGENCY | Bounce |
| 6041.67 | 2/10/2022 | VERTEX FUNDING L HCF INSURA Feb 10 | C AA728166 | HCF INSURANCE AGENCY | Merchant Payment |
| -6041.67 | 2/10/2022 | | AA728166 | HCF INSURANCE AGENCY | Bounce |
| 6041.67 | 2/11/2022 | VERTEX FUNDING L HCF INSURA Feb 11 | C AA728166 | HCF INSURANCE AGENCY | Merchant Payment |
| -6041.67 | 2/11/2022 | | AA728166 | HCF INSURANCE AGENCY | Bounce |
| 6041.67 | 2/14/2022 | VERTEX FUNDING L HCF INSURA Feb 14 | C AA728166 | HCF INSURANCE AGENCY | Merchant Payment |
| 6666.67 | 2/14/2022 | WIRE FROM THE JASON EDWAR | AA728166 | HCF INSURANCE AGENCY | Merchant Payment |
| -6041.67 | 2/14/2022 | | AA728166 | HCF INSURANCE AGENCY | Bounce |
| 6041.67 | 2/15/2022 | VERTEX FUNDING L HCF INSURA Feb 15 | C AA728166 | HCF INSURANCE AGENCY | Merchant Payment |
| -6041.67 | 2/15/2022 | | AA728166 | HCF INSURANCE AGENCY | Bounce |
| 6041.67 | 2/16/2022 | VERTEX FUNDING L HCF INSURA Feb 16 | C AA728166 | HCF INSURANCE AGENCY | Merchant Payment |
| -6041.67 | 2/16/2022 | | AA728166 | HCF INSURANCE AGENCY | Bounce |
| 6041.67 | 2/17/2022 | VERTEX FUNDING L HCF INSURA Feb 17 | C AA728166 | HCF INSURANCE AGENCY | Merchant Payment |
| -6041.67 | 2/17/2022 | | AA728166 | HCF INSURANCE AGENCY | Bounce |
| 6041.67 | 2/18/2022 | VERTEX FUNDING L HCF INSURA Feb 18 | C AA728166 | HCF INSURANCE AGENCY | Merchant Payment |
| 6666.67 | 2/18/2022 | WIRE FROM THE JASON MICHAEL EDWAR | AA728166 | HCF INSURANCE AGENCY | Merchant Payment |
| -6041.67 | 2/18/2022 | | AA728166 | HCF INSURANCE AGENCY | Bounce |
| 6041.67 | 2/22/2022 | VERTEX FUNDING L HCF INSURA Feb 22 | C AA728166 | HCF INSURANCE AGENCY | Merchant Payment |
| -6041.67 | 2/22/2022 | | AA728166 | HCF INSURANCE AGENCY | Bounce |
| 6041.67 | 2/23/2022 | VERTEX FUNDING L HCF INSURA Feb 23 | C AA728166 | HCF INSURANCE AGENCY | Merchant Payment |
| -6041.67 | 2/23/2022 | | AA728166 | HCF INSURANCE AGENCY | Bounce |
| 6041.67 | 2/24/2022 | VERTEX FUNDING L HCF INSURA Feb 24 | C AA728166 | HCF INSURANCE AGENCY | Merchant Payment |
| -6041.67 | 2/24/2022 | | AA728166 | HCF INSURANCE AGENCY | Bounce |
| 6041.67 | 2/25/2022 | VERTEX FUNDING L HCF INSURA Feb 25 | C AA728166 | HCF INSURANCE AGENCY | Merchant Payment |
| 6666.67 | 2/25/2022 | WIRE FROM THE JASON MICHAEL EDWAR | AA728166 | HCF INSURANCE AGENCY | Merchant Payment |
| -6041.67 | 2/25/2022 | | AA728166 | HCF INSURANCE AGENCY | Bounce |
| 6041.67 | 2/28/2022 | VERTEX FUNDING L HCF INSURA Feb 28 | C AA728166 | HCF INSURANCE AGENCY | Merchant Payment |
| -6041.67 | 2/28/2022 | | AA728166 | HCF INSURANCE AGENCY | Bounce |
| 6041.67 | 3/1/2022 | VERTEX FUNDING L HCF INSURA Mar 1 | CCD AA728166 | HCF INSURANCE AGENCY | Merchant Payment |
| -6041.67 | 3/1/2022 | | AA728166 | HCF INSURANCE AGENCY | Bounce |
| 6041.67 | 3/2/2022 | VERTEX FUNDING L HCF INSURA Mar 2 | C AA728166 | HCF INSURANCE AGENCY | Merchant Payment |
| -6041.67 | 3/2/2022 | | AA728166 | HCF INSURANCE AGENCY | Bounce |
| 6041.67 | 3/3/2022 | VERTEX FUNDING L HCF INSURA Mar 3 | CCD AA728166 | HCF INSURANCE AGENCY | Merchant Payment |
| -6041.67 | 3/3/2022 | | AA728166 | HCF INSURANCE AGENCY | Bounce |
| -6041.67 | 3/4/2022 | | AA728166 | HCF INSURANCE AGENCY | Bounce |
| -6041.67 | 3/7/2022 | | AA728166 | HCF INSURANCE AGENCY | Bounce |

| | |
|---|---|
| Date Funded | 12/21/2021 |
| Paid | 352291.86 |
| Bounced | -235625.13 |
| Total Paid Back | 116666.73 |
| Payback | 725000 |
| Outstanding | 608333.27 |
| Owe | 197500.11 |

| Date | Fund | Daily | Chargeback | Suppose to pay |
|---|---|---|---|---|
| | 500000 | 352291.9 | -235625.13 | 314166.8 |
| Thursday, December 16, 2021 | | 0 | 0 | |
| Friday, December 17, 2021 | | 0 | 0 | |
| Saturday, December 18, 2021 | | 0 | 0 | |
| Sunday, December 19, 2021 | | 0 | 0 | |
| Monday, December 20, 2021 | | 0 | 0 | |
| Tuesday, December 21, 2021 | 500000 | 12083.34 | 0 | |
| Wednesday, December 22, 2021 | | 6041.67 | 0 | 6041.67 |
| Thursday, December 23, 2021 | | 6041.67 | 0 | 6041.67 |
| Friday, December 24, 2021 | | 6041.67 | -6041.67 | 6041.67 |
| Saturday, December 25, 2021 | | 0 | 0 | |
| Sunday, December 26, 2021 | | 0 | 0 | |
| Monday, December 27, 2021 | | 6041.67 | -6041.67 | 6041.67 |
| Tuesday, December 28, 2021 | | 6041.67 | 0 | 6041.67 |
| Wednesday, December 29, 2021 | | 6041.67 | 0 | 6041.67 |
| Thursday, December 30, 2021 | | 6041.67 | -6041.67 | 6041.67 |
| Friday, December 31, 2021 | | 6041.67 | -6041.67 | 6041.67 |
| Saturday, January 1, 2022 | | 0 | 0 | |
| Sunday, January 2, 2022 | | 0 | 0 | |
| Monday, January 3, 2022 | | 24166.68 | 0 | 6041.67 |
| Tuesday, January 4, 2022 | | 6041.67 | 0 | 6041.67 |
| Wednesday, January 5, 2022 | | 6041.67 | -24166.68 | 6041.67 |
| Thursday, January 6, 2022 | | 6041.67 | 0 | 6041.67 |
| Friday, January 7, 2022 | | 6041.67 | 0 | 6041.67 |
| Saturday, January 8, 2022 | | 0 | 0 | |
| Sunday, January 9, 2022 | | 0 | 0 | |
| Monday, January 10, 2022 | | 6041.67 | 0 | 6041.67 |
| Tuesday, January 11, 2022 | | 6041.67 | 0 | 6041.67 |
| Wednesday, January 12, 2022 | | 6041.67 | 0 | 6041.67 |
| Thursday, January 13, 2022 | | 6041.67 | 0 | 6041.67 |
| Friday, January 14, 2022 | | 6041.67 | 0 | 6041.67 |
| Saturday, January 15, 2022 | | 0 | 0 | |
| Sunday, January 16, 2022 | | 0 | 0 | |
| Monday, January 17, 2022 | | 0 | 0 | |
| Tuesday, January 18, 2022 | | 6041.67 | 0 | 6041.67 |
| Wednesday, January 19, 2022 | | 6041.67 | 0 | 6041.67 |
| Thursday, January 20, 2022 | | 6041.67 | -6041.67 | 6041.67 |
| Friday, January 21, 2022 | | 6041.67 | -6041.67 | 6041.67 |
| Saturday, January 22, 2022 | | 0 | 0 | |
| Sunday, January 23, 2022 | | 0 | 0 | |
| Monday, January 24, 2022 | | 6041.67 | -6041.67 | 6041.67 |
| Tuesday, January 25, 2022 | | 6041.67 | -6041.67 | 6041.67 |
| Wednesday, January 26, 2022 | | 6041.67 | 0 | 6041.67 |
| Thursday, January 27, 2022 | | 6041.67 | -6041.67 | 6041.67 |
| Friday, January 28, 2022 | | 6041.67 | -6041.67 | 6041.67 |
| Saturday, January 29, 2022 | | 0 | 0 | |
| Sunday, January 30, 2022 | | 0 | 0 | |
| Monday, January 31, 2022 | | 6041.67 | -6041.67 | 6041.67 |
| Tuesday, February 1, 2022 | | 6041.67 | -6041.67 | 6041.67 |
| Wednesday, February 2, 2022 | | 6041.67 | 0 | 6041.67 |
| Thursday, February 3, 2022 | | 6041.67 | -6041.67 | 6041.67 |
| Friday, February 4, 2022 | | 6041.67 | -6041.67 | 6041.67 |
| Saturday, February 5, 2022 | | 0 | 0 | |
| Sunday, February 6, 2022 | | 0 | 0 | |
| Monday, February 7, 2022 | | 6041.67 | -6041.67 | 6041.67 |
| Tuesday, February 8, 2022 | | 6041.67 | 0 | 6041.67 |
| Wednesday, February 9, 2022 | | 6041.67 | -6041.67 | 6041.67 |
| Thursday, February 10, 2022 | | 6041.67 | -6041.67 | 6041.67 |
| Friday, February 11, 2022 | | 6041.67 | -6041.67 | 6041.67 |
| Saturday, February 12, 2022 | | 0 | 0 | |
| Sunday, February 13, 2022 | | 0 | 0 | |
| Monday, February 14, 2022 | | 12708.34 | 0 | 6041.67 |
| Tuesday, February 15, 2022 | | 6041.67 | -6041.67 | 6041.67 |
| Wednesday, February 16, 2022 | | 6041.67 | -6041.67 | 6041.67 |
| Thursday, February 17, 2022 | | 6041.67 | -6041.67 | 6041.67 |
| Friday, February 18, 2022 | | 12708.34 | -6041.67 | 6041.67 |
| Saturday, February 19, 2022 | | 0 | 0 | |
| Sunday, February 20, 2022 | | 0 | 0 | |
| Monday, February 21, 2022 | | 0 | 0 | |
| Tuesday, February 22, 2022 | | 6041.67 | -6041.67 | 6041.67 |
| Wednesday, February 23, 2022 | | 6041.67 | -6041.67 | 6041.67 |
| Thursday, February 24, 2022 | | 6041.67 | -6041.67 | 6041.67 |
| Friday, February 25, 2022 | | 12708.34 | -6041.67 | 6041.67 |
| Saturday, February 26, 2022 | | 0 | 0 | |
| Sunday, February 27, 2022 | | 0 | 0 | |
| Monday, February 28, 2022 | | 6041.67 | -6041.67 | 6041.67 |
| Tuesday, March 1, 2022 | | 6041.67 | -6041.67 | 6041.67 |
| Wednesday, March 2, 2022 | | 6041.67 | -6041.67 | 6041.67 |
| Thursday, March 3, 2022 | | 6041.67 | -6041.67 | 6041.67 |
| Friday, March 4, 2022 | | 0 | -6041.67 | 6041.67 |
| Saturday, March 5, 2022 | | 0 | 0 | |
| Sunday, March 6, 2022 | | 0 | 0 | |
| Monday, March 7, 2022 | | 0 | -6041.67 | 6041.67 |

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ERIE

VERTEX FUNDING LLC

                              Plaintiff,

        -against-

HCF INSURANCE AGENCY and JASON
MICHAEL ADELMAN,

                              Defendants

Index No.: E2022-439

**ATTORNEY AFFIRMATION OF SERVICE**

STATE OF NEW YORK        )
COUNTY OF NEW YORK       )

     Steven Zakharyayev, an attorney at law, duly licensed to practice in the Courts of the State of New York, affirms the following under penalty of perjury:

     I am over 18 years of age and am not a party to this action. I reside in the State of New Jersey.

     On March 28, 2022, I served the Defendants with a true and exact copy of the Notice of Commencement of Action Subject to Mandatory Electronic Filing and Summons & Complaint, by mailing same via certified mail, return receipt requested, in a sealed envelope, and depositing same in an official depository of the U.S. Postal Service addressed to the Defendants as follows:

Dated: March 28, 2022
      New York, New York

          Law Offices of Steven Zakharyayev, PLLC
          *Attorney for Judgment-Creditor*
          Empire Recovery Services, LLC
          10 W 37th Street, RM 602
          New York, NY 10018

          **/s/Steven Zakharyayev**
          Steven Zakharyayev, Esq.
          T: 201-716-0681
          E: LegalDepartment@EmpireRecover.com

Defendants' Address(es)
HCF INSURANCE AGENCY
21747 ERWIN STREET, 2ND FLOOR WOODLANDS HILLS CA 97367

JASON MICHAEL ADELMAN
19 HITCHING POST LANE BELL CANYON CA 91307

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ERIE

---

VERTEX FUNDING LLC

Plaintiff,

-against-

HCF INSURANCE AGENCY and JASON MICHAEL
ADELMAN,

Defendants

---

Index No.: E2022-439

**AFFIRMATION OF ADDITIONAL
MAILING PURSUANT TO
CPLR §3215(g)(3)** and **3215(g)(4)**

STATE OF NEW YORK)
COUNTY OF NEW YORK)

Steven Zakharyayev, an attorney at law, duly licensed to practice in the Courts of the State of New York, affirms the following under penalty of perjury:

I am over 18 years of age and am not a party to this action. I reside in the State of New Jersey.

On March 28, 2022, I served an additional copy of the Notice of Commencement of Action Subject to Mandatory Electronic Filing, Summons and Verified Complaint on JASON MICHAEL ADELMAN in accordance with the additional notice requirements of CPLR § 3215(g)(3) by mailing same in a sealed envelope, bearing the legend "personal and confidential" and not indicating on the outside that the communication is from an attorney or concerns an alleged debt, with postage paid wrapper in an official depository under the exclusive care and custody of the United States Postal Service within the State of New York designated for that purpose addressed to:

On March 28, 2022, I served an additional copy of the Notice of Commencement of Action Subject to Mandatory Electronic Filing, Summons and Verified Complaint on HCF INSURANCE AGENCY in accordance with the additional notice requirements of CPLR § 3215(g)(4) by mailing same in a sealed envelope, bearing the legend "personal and confidential" and not indicating on the outside that the communication is from an attorney or concerns an alleged debt, with postage paid wrapper in an official depository under the exclusive care and custody of the United States Postal Service within the State of New York designated for that purpose addressed to:

Dated: March 28, 2022
        New York, New York

Law Offices of Steven Zakharyayev, PLLC
*Attorney for Judgment-Creditor*
Empire Recover Services, LLC
10 W 37th Street, RM 602
New York, NY 10018

Defendant(s)' Address(es)
JASON MICHAEL ADELMAN
19 HITCHING POST LANE BELL CANYON CA 91307

*/s/Steven Zakharyayev*
Steven Zakharyayev, Esq.

T: 201-716-0681
E: LegalDepartment@EmpireRecover.com

Case 7:22-cv-03376-NSR    Document 1-1    Filed 04/26/22    Page 54 of 54

HCF INSURANCE AGENCY
21747 ERWIN STREET, 2ND FLOOR WOODLANDS HILLS CA 97367